## In re DAVIS.

No. 26924.

District Court, E. D. New York.

Jan. 6, 1936.

Elmer P. Smith, of Port Jefferson, N. Y. (Winston E. Barrow, of New York City, of counsel), for First Nat. Bank of Port Jefferson, Melancthon K. Hawkins, and Elmer P. Smith.

George W. Tucker, of New York City, for petitioning debtor.

BYERS, District Judge.

This is a debtor proceeding under section 75 of the Bankruptcy Act, as amended (11 U.S.C.A. § 203), touching agricultural compositions and extensions.

The debtor filed on September 28, 1934; his attempted composition failed and thereafter four motions were made in respect of four mortgages under foreclosure prior to the date of filing, to procure the lifting of as many stays of further proceedings in the state court touching those mortgages, on the ground that subdivision (s) of said section 75 (the so-called Frazier-Lemke Act, 48 Stat. 1289) was unconstitutional.

Decision of those motions was withheld, on consent of both attorneys, when it became apparent that the Supreme Court would decide the question, which it did on May 27, 1935, holding the subdivision to be in violation of the Fifth Amendment to the Constitution. Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S. Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106.

Thereafter the motions were granted and, by several orders bearing date of July 1, 1935, the stays were vacated and the several plaintiffs permitted to proceed with their foreclosure suits. For convenience, the actions will be referred to as numbers 1, 2, 3, and 4.

The status of each will be described presently.

On September 6, 1935, the debtor filed his amended petition, reciting his failure

to effect a composition or extension of his debts, and on that day procured an order to show cause directed to the plaintiffs in the four cases, wherein the vacation of the said orders of July 1, 1935, is sought, and special relief with reference to action No. 1 is prayed.

The motion was argued on September 18th and, by stipulation, consideration was adjourned until November 8th, when all briefs were to be filed.

The debtor relies upon subdivision (s) of section 75 of the Bankruptcy Act (11 U.S.C.A. § 203 (s), which became a law on August 28, 1935, being the "Frazier-Lemke Act" in its present form.

The actions in question must be separately listed.

*Action No. 1.*—This suit was instituted April 30, 1934, by the First National Bank of Port Jefferson against the debtor, to foreclose a mortgage for $8,000.00, made by the debtor on or prior to January 6, 1927, as to which there was default of interest and taxes, and had proceeded to judgment of foreclosure and sale on June 27, 1934; thereafter the debtor's first petition was filed, under the Frazier-Lemke Act of June 28, 1934, 48 Stat. 1289.

When the stay incident to the proceeding so begun was lifted, and the order of July 1, 1935, was signed and filed, there was no legal barrier to the further prosecution of that action. Accordingly, the property was advertised for sale at public auction pursuant to law; the sale was duly held on August 24, 1935, and on that day the referee executed, acknowledged and delivered his deed to the purchaser, who was the plaintiff in that action and whose bid was $9,000.00.

The deed was recorded on August 26, 1935, and, while the motion papers are not clear on the subject, it is assumed that the purchaser was let into possession. If that is an erroneous assumption, the facts to the contrary should be made to appear.

Assuming such to be the fact, the title of the debtor to the property described in that mortgage was completely divested, and on August 24, 1935, the purchaser at the foreclosure sale became the owner of an indefeasible title (unless there was some infirmity in the foreclosure action itself, which has not been asserted in this proceeding) and the debtor had no title, interest, estate, or equity of redemption over which this court could exert jurisdiction in obedience to subdivision (n) of section 75 of the Bankruptcy Act as enacted August 28, 1935 (11 U.S.C.A. § 203 (n).

Subdivision (n) as it existed before the amendment of August 28, 1935, read as follows:

"(n) The filing of a petition pleading for relief under this section shall subject the farmer and his property, wherever located, to the exclusive jurisdiction of the court. In proceedings under this section, except as otherwise provided herein, the jurisdiction and powers of the court, the title, powers, and duties of its officers, the duties of the farmer, and the rights and liabilities of creditors, and of all persons with respect to the property of the farmer and the jurisdiction of the appellate courts, shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the farmer's petition or answer was filed." 47 Stat. 1470.

On July 1, 1935, this court had surrendered its exclusive jurisdiction over the debtor and his property, to the extent reflected in the terms of the order to which reference has been made, whereby continuance of the foreclosure was permitted, since there was then no reason existing to the contrary. That order was not appealed; nor has an effort since been made to show that it was invalid in any respect.

With reference therefore to this particular action, it is not apparent how this court possesses the power to order the sale in foreclosure held on August 24, 1935, to be vacated or set aside, or otherwise assailed.

*Action No. 2.*—The same bank is the plaintiff in this cause, and consents that the motion be granted, and that the order of July 1, 1935, in that cause, be vacated and set aside.

That action was started May 2, 1934, to foreclose a mortgage on other property, made by the debtor on or before June 3, 1930. Judgment of foreclosure and sale was duly entered on June 27, 1934.

That action was stayed, and the stay lifted in all respects as stated with reference to action No. 1, but apparently there has not been a sale of any kind pursuant to the judgment.

It is stated in the brief filed in opposition to this motion under Point III as follows:

"The First National Bank of Port Jefferson consents to the vacating of the said

order of this Court dated July 1st, 1935, permitting the mortgagees (sic) to sell their respective properties with respect to action Number 2, foreclosing it's mortgage on the Petitioner's 'Home Place.' "

Accordingly the motion as to this action No. 2 is granted on consent, but without prejudice to the right of the mortgagee hereafter to seek any relief of which it may be advised in connection with that foreclosure suit, and the order to be entered hereon shall so provide.

*Action No. 3.*—This foreclosure suit was instituted March 19, 1934, by Elmer P. Smith as executor of Blydenburgh, deceased, to foreclose a mortgage for $2,-000.00 dated on or about May 27, 1930, made by the debtor to the plaintiff as such executor.

Default in the payment of interest from the date of the mortgage is alleged, as well as non-payment of taxes for all of the years embraced between the dates given.

The plaintiff duly recovered judgment of foreclosure and sale in the county court of Suffolk county on August 10, 1934, and the property was duly advertised for sale on October 27, 1934.

This motion to vacate that order is based upon the rights asserted by the debtor to have been created in his favor by the new subsection (s) of section 75, approved August 28, 1935 (11 U.S.C.A. § 203 (s).

There is no affidavit in opposition to the motion, but it is gathered, from the brief filed in that behalf, that no attempt has been made to conduct a sale pursuant to the said judgment recovered and entered on August 10, 1934.

*Action No. 4.*—This foreclosure suit was instituted April 2, 1934, by Melancthon K. Hawkins to foreclose a mortgage for $3,000.00 made by the debtor to the plaintiff on August 1, 1926, and payable in three years; apparently $150.00 was paid on account of principal, and default in interest started on February 1, 1931, and continued until the date of bringing suit, and a failure to pay taxes for the years 1931, 1932 and 1933 is said to have occurred, and there is no denial.

In all other respects, the recitals of fact respecting action No. 3 apply to this.

As to these two actions therefore, the question for decision is whether the new law constituting subsection (s) of section 75 of the Bankruptcy Act is constitutional.

The first inquiry is whether the lapses pointed out in Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106, with respect to the prior statute have been avoided.

The rights taken from the mortgagee in violation of the Constitution, as listed by the court in that case, were:

1. The right to retain the lien until the indebtedness thereby secured was paid.

2. The right to realize upon the security by a judicial public sale.

3. The right to determine when such sale shall be held, subject only to the discretion of the court.

4. The right to protect its interest in the property by bidding at such sale whenever held, and thus to assure having the mortgaged property devoted primarily to the satisfaction of the debt, either through receipt of the proceeds of a fair competitive sale or by taking the property itself.

5. The right to control meanwhile the property during the period of default, subject only to the discretion of the court, and to have the rents and profits collected by a receiver for the satisfaction of the debt.

The foregoing were stated with reference to the rights of a mortgagee under the laws of Kentucky. They apply with equal force to New York law.

The new subsection (s) became effective August 28, 1935, as stated. It has to do with the debtor's status, if his proposed composition fails (as in this case).

1. He may have all of his property appraised, and obtain from the referee an order setting aside to him his unencumbered exemptions, and the possession, under the supervision and control of the court, of any part or all of the remainder of his property, subject to existing mortgages, liens, etc., and the latter are to remain in force and effect and the property covered thereby shall be subject "to the payment of the claims of the secured creditors, as their interests may appear." 11 U.S.C.A. § 203 (s) (1).

2. Following compliance with the foregoing, the court shall stay all proceedings against the debtor—such as are here involved—for three years. During that period, the debtor remains in possession of all his property, provided he pays a reasonable rental semiannually for such property as to which he remains in possession, the first payment to be made within one year from

the date of the stay order; the rent is to be paid into court, and applied to taxes and upkeep, the balance to be distributed among secured and unsecured creditors and applied on their claims "as their interests may appear." 11 U.S.C.A. § 203 (s) (2).

Who fixes the rent and how, is not stated.

Unexempt perishable and other personal property may be sold under order of the court. That provision occurs in a sentence which begins: "The court, in its discretion," and continues, after the matters just stated: "and may, in addition to the rental, require payments on the principal due and owing by the debtor to the secured or unsecured creditors, as their interests may appear, in accordance with the provisions of this Act [title], and may require such payments to be made quarterly, semiannually, or annually, not inconsistent with the protection of the rights of the creditors and the debtor's ability to pay, with a view to his financial rehabilitation." 11 U.S.C.A. § 203 (s) (2).

Whether the foregoing applies to the exaction of principal payments for the benefit of the holders of such liens as chattel mortgages (since the language occurs in connection with the possible sale of unexempt personal property "not reasonably necessary for the farming operations of the debtor") or is intended to furnish principal funds for the benefit of the holders of mortgage liens on the debtor's real estate, would require decision if the issue were presented between the two classes of secured creditors.

3. At the end of three years, or prior thereto, the debtor may pay into court the amount of the original appraisal of the property of which he remains in possession, less the amount paid on principal. A reappraisal may be had at the instance of any creditor or of the debtor, and the debtor "shall then pay the value so arrived at into court, less payments made on the principal, for distribution to all secured and unsecured creditors, as their interests may appear," whereupon the debtor's property, by court order, shall be turned over to him free and clear of encumbrances. The following proviso then occurs: "That upon request in writing by any secured creditor or creditors, the court shall order the property upon which such secured creditors have a lien to be sold at public auction. The debtor shall have ninety days to redeem any property sold at such sale, by paying the amount for which any such property was sold, together with 5 per centum per annum interest, into court, and he may apply for his discharge, as provided for by this Act [title]. If, however, the debtor at any time fails to comply with the provisions of this section, or with any orders of the court made pursuant to this section, or is unable to refinance himself within three years, the court may order the appointment of a trustee, and order the property sold or otherwise disposed of as provided for in this Act [title]." 11 U.S.C.A. § 203 (s) (3).

4. The conciliation commissioner under subsection (a) is to act as referee and his fees are fixed, and administration fees are provided for. If, at the time of filing the petition, a receiver is in charge of the debtor's property, the receiver is divested and possession of the property is to be returned to the debtor.

5. Old cases which have been dismissed because of the unconstitutionality of former subsection (s) shall be reinstated without the payment of further fees. Prior discharge under the general act is not a bar to the debtor's application under this law.

6. "This Act [title] is hereby declared to be an emergency measure and if in the judgment of the court such emergency ceases to exist in its locality, then the court, in its discretion, may shorten the stay of proceedings herein provided for and proceed to liquidate the estate." 11 U.S.C.A. § 203 (s) (6).

The new law, unlike its predecessor, is not restricted in terms to debts existing upon the day that it took effect. No questions arise in this record with respect to mortgages entered into thereafter.

Its operation upon mortgage liens having an established existence and fortified by judgments of foreclosure and sale prior to the effective day is the only issue.

When the new statute is compared to the former subsection (s) of section 75, 48 Stat. 1289, the following results are to be observed:

A. A sale of the mortgaged premises is stayed for three years, instead of five. This is a difference in degree, not principle.

The quoted provision for a public auction occurs in the paragraph which deals with the happenings at the end of the three year stay, or at such time, prior thereto, as

the debtor may deposit in court the amount of money resulting from either the first or later appraisal. It is clear that the public auction is an alternative to the acquisition of his property by the debtor upon paying into court the appraisal figure.

He may anticipate the three year period, but the mortgagee cannot compel a sale within that time. This is so because the debtor is clearly given a three year period within which to refinance himself.

B. The mortgagee's right to control the property during the period of default, subject to the discretion of the court, and to have the rents and profits collected by a receiver for the satisfaction of the debt, is entirely defeated.

In these respects therefore the new statute shares the infirmities of its predecessor.

The mortgagee is permitted to retain the lien of his mortgage, and the application of the value of the property to the lien is probably secured to the mortgagee, but not until the period of three years has elapsed.

Thus the first right of a mortgagee inherent in his status as such, as recited in the Radford Case, is secured in the new law; the second and fourth are recognized in a qualified way, that is, they have been impaired in part, and the third and fifth have been taken away without compensation.

It is not a question of the degree or percentage of constitutionality which may be required of a statute, enacted with special reference to that which the Supreme Court has declared to be the law, which confronts this court; but the issue is: Does the new statute defeat the substance of that which authoritative adjudication has declared to pertain to a mortgagee? The answer must be in the affirmative.

The opinion in Re Young (D.C.) 12 F.Supp. 30, has been consulted and found to be helpful in reaching a conclusion in this case.

Another aspect of the statute presents misgivings which are too serious not to require comment. In the Radford Case, the Supreme Court did not pass upon the question of whether subsection (s) is a competent exercise of the congressional power to " * * * establish * * * uniform Laws on the subject of Bankruptcies throughout the United States." Constitution, art. 1, § 8, cl. 4.

The difficulty is this: The impairment of mortgage liens is not uniform, but is confined in its operation to mortgages upon farm property.

Thus a mortgage lien upon the property of the man who supplies gasoline to the farmer to run his tractor, or upon the property of the man who sells seed to him, or his food or his clothing or his building materials, is not subject to impairment, although any one of those persons may become a bankrupt, and the lien of the mortgage upon his property would not be subject to such partial devitalization as is here involved, through the operation of any "bankruptcy" statute.

It is only the lien upon farm property, existing in full force and legal effect at the time of the passage of this law, which is subjected to this form of legislative impairment.

Not all farm mortgages are selected as investments by those whose money is involved. Of those now under scrutiny, two were placed by banks, whereby depositors' funds were thus committed, and one by an executor who so loaned the money of the beneficiaries under the will in whose interests he was acting.

Those whose funds were thus placed presumably had no choice in the selection of the security pledged for the loans, and yet, if the law be constitutional, they are to suffer a substantial impairment of the security because of the happening that the funds found their way into liens upon farm property, instead of upon property otherwise used.

Once it is perceived that this law has for its object the impairment of farm property liens alone, it follows that uniformity results only as to a selected class of bankrupts; and that the law does not descend upon the holders of all mortgage liens upon property being administered in the bankruptcy courts, but only upon those holding liens upon farm property.

It is not thought that the constitutional requirement of uniformity, touching bankruptcy laws, has thus been met.

The requirement has been discussed in Hanover Nat. Bank v. Moyses, 186 U.S. 181, 22 S.Ct. 857, 46 L.Ed. 1113, Leidigh Carriage Co. v. Stengel (C.C.A.) 95 F. 637,

at page 646, and In re Sink (D.C.) 27 F. (2d) 361, under circumstances dissimilar to those here presented. The principle announced is broadly stated to be that the uniformity must be geographical. It is not stated in any of those opinions that such uniformity is reflected in a statute which operates selectively with reference to certain bankrupts, and to certain holdings of property; or that a lien may be impaired if it attaches to a given kind of property when legal title to it is vested in a certain designated class of owners, while such would not be the case if ownership by all other classes of people were involved.

If the mutilation or sterilization of liens is a necessary consequence of the exercise of the power to enact bankruptcy laws (paragraph (d) of section 67, as amended in 1910 [11 U.S.C.A. § 107 (d)] disclaims such a purpose where good faith appears) it is thought that such process should apply alike to all liens of a given class, and not only to those attaching to property of a selected class of ownership, in order that the requirement of uniformity may be fulfilled. Subsection (s) of section 75 of the Bankruptcy Act, in its present form (11 U.S.C.A. § 207 (s), is not a valid exercise of the constitutional power to enact uniform laws on the subject of bankruptcy.

Motions denied. Settle orders.