### In re Harry Frederick CLAUSSEN, Debtor.

### Harry Frederick CLAUSSEN, Plaintiff,

### v.

### BROOKINGS COUNTY, SOUTH DAKOTA, Defendant.

**Bankruptcy No. 89–40495–PKE.**
**Adv. No. 90–4007–PKE.**

United States Bankruptcy Court, D. South Dakota.

Sept. 26, 1990.

Steven G. Ahrendt, Ellingson & Ahrendt, Flandreau, S.D., for plaintiff.

Wm. Mark Kratochvil, Deputy States Atty., Office of the States Atty., Brookings County, Brookings, S.D., for defendant.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

## ACTION

Debtor/Plaintiff Harry Frederick Claussen ("Claussen") filed an adversary complaint to determine the validity and priority

of a statutory lien arising out of emergency medical services provided to his indigent wife which were paid for by Brookings County ("County"), South Dakota. This matter mandates that the Court balance valued competing policies: a local government's interest in being reimbursed for making compulsory health care payments, which enjoy special exemption status under state law, and federally-created bankruptcy policies of the automatic stay, the fresh start and uniform bankruptcy law. For reasons outlined below, the Court holds the indigent lien is avoided and discharged. The instant matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), (J), and (K). This Court has jurisdiction over the parties and subject matter of this action under 28 U.S.C. § 1334. This memorandum constitutes Findings of Fact and Conclusions of Law pursuant to Fed.R.Civ.P. 52 and Bankr.R. 7052.

### FACTS

Claussen and his wife, Lilly, owned a house in joint tenancy in Elkton, Brookings County, South Dakota. Lilly checked into Sioux Valley Hospital on March 31, 1989. The hospital served notice of emergency hospitalization on Brookings County on April 3, 1989. Lilly died April 16, 1989. On October 11, 1989, the hospital submitted its request for payment to Brookings County. Claussen filed a Chapter 7 petition October 24, 1989, claiming, pursuant to his schedules, that his house, worth $6,000 in Elkton, was exempt property under South Dakota's homestead statute. Brookings County paid Sioux Valley Hospital on December 19, 1989, and, contemporaneously, filed an indigent emergency medical services lien upon Claussen. Claussen, armed with Chapter 7's discharge statutes, maintains the County's lien is dischargeable. The County, citing numerous state statutes, believes the indigent medical services lien is exempt from discharge in bankruptcy.

### ISSUES

1. Is perfection of a statutory lien after the debtor files bankruptcy null? Yes.

2. Is an inchoate statutory lien dischargeable? Yes.

3. Is a statutory lien for medical services dischargeable pursuant to bankruptcy's policies of the fresh start and equitable creditor treatment if the underlying transaction is dischargeable? Yes.

4. Is the delegation of power to designate which interests are statutory to individual states a violation of the United States Constitution's uniform bankruptcy law mandate to the extent such liens are not uniformly dischargeable in bankruptcy? Yes.

### DISCUSSION

There are three independent bases for discharging the County's lien. Initially, South Dakota statutes and case law, outlining the procedure for reimbursement of private hospitals for emergency medical services provided to indigents, warrant discussion.

I. South Dakota's Indigent Medical Services Lien.

 Statutory interpretation starts with the statute's language. *Pa. Dep't of Public Welfare v. Davenport*, —— U.S. ——, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990); *Millard v. U.S. District Court for the S.D. of Iowa*, 490 U.S. 296, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318 (1989). Where the statute's language is plain, the sole function of the court is to enforce it by its terms. *See U.S. v. Ron Pair Enters., Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *Opal Mfg. Co., Ltd. v. U.M.C. Indus., Inc.*, 553 F.Supp. 131, 133 (D.D.C. 1982). The Court shall apply the indigent statutes' plain and clear language.

The county where an indigent established residency is liable to a private hospital furnishing emergency hospitalization to the indigent. S.D.C.L. § 28–13–33. South Dakota statutes provide for emergency hospitalization service payment, as well as nonemergency service compensation, subject to the county's discretion. *Sioux Valley Hosp. Ass'n v. Yankton County*, 424 N.W.2d 379, 381 (S.D.1988). A county's

payments for emergency medical services provided to the indigent are not common law rights but, rather, are statutory and must be narrowly construed. *St. Paul Ramsey Medical Center v. Pennington County*, 402 N.W.2d 340, 342 (S.D.1987). South Dakota lien laws must be strictly construed. *In re Swanson*, 17 B.R. 185, 186 (Bankr.D.S.D.1982). South Dakota's statutes are constitutional as to both in-state and out-of-state hospitals seeking compensation. *St. Paul Ramsey Medical Center v. Pennington County*, 857 F.2d 1185, 1188 (8th Cir.1988).

A county paying the indigent's hospital bill has a claim which may be enforced against any property not exempt from execution which such person may have or later acquire against the person so relieved for the value of the relief. S.D.C.L. § 28–14–1. A relevant statute provides:

> Whenever any county ... shall become obligated to, and does pay for the care ... of any poor person ..., the county in such cases shall have a lien upon all the property, both real and personal, including joint tenancy and homestead interests belonging to the poor person, ... such lien to become effective as between the county and the poor person and other persons having actual knowledge of such payments to the poor person, immediately upon the payment made by any county....

S.D.C.L. § 28–14–5. The lien on the recipient's property includes joint tenancy and homestead interests of any married indigent. S.D.C.L. § 28–14–6.

The county auditor, immediately after issuing the county warrants or payment of cash to the hospital for the services provided the indigent, is to record the lien. S.D.C.L. § 28–14–7. What the statutes state, simply, is a public policy adopted by the South Dakota Legislature requiring hospital-provided indigent emergency services be paid by the indigent's county. The county is then entitled to reimbursement from the indigent.

S.D.C.L. § 28–14–5's express "... such lien to become effective ... *immediately* upon payment by any county ..." (empha-sis added) language ties lien creation to county payment. "Immediately" common-ly refers to forthwith, without delay. *Black's Law Dictionary* 675 (5th ed. 1979). Words in a statute must be given their plain and ordinary meaning. *Jones v. Hanley Dawson Cadillac Co.*, 848 F.2d 803, 807 (7th Cir.1988). The indigent lien statutes do not provide for the indigent lien to arise prior to county payment.

██ Bankruptcy considerations aside, the County perfected its lien when it paid Sioux Valley Hospital and contemporane-ously filed a notice of lien on December 19, 1989. Privity in contract exists between indigent Lilly Claussen and Sioux Valley Hospital from March 31, 1989,–on, since services were provided. No such privity between the County and the indigent exists which may justify relating back the lien to the date of medical services. Statutory liens exist in derogation of the common law and are construed strictly. *In re Bunker Exploration Co.*, 48 B.R. 708, 710 (Bankr. W.D.Okla.1985). Moreover, indigent lien recoupments for medical services furnished are part of the legislature's scheme to re-duce tax burdens of supplying medical needs to paupers and should be strictly construed to authorize recovery only where expressly indicated. *Estate of Messerschmidt*, 352 N.W.2d 774, 775 (Minn.App. 1984). Finding no statutory or common law authority supporting retroactive lien attachment and in applying the rules of construction, the Court finds the indigent lien cannot arise prior to county payment. But for an intervening bankruptcy petition, the County perfected its lien against Claus-sen on December 19, 1989.

██ Hospitals seeking reimbursement pursuant to state statutes must meet vari-ous notice criteria. *Sioux Valley Hosp. Ass'n v. Tripp County*, 404 N.W.2d 519, 521 (S.D.1987). There is no accusation that Sioux Valley Hospital failed to provide stat-utory notice to the County. It appears, however, that Claussen never received no-tice from the County. Notice from the county filing its lien to the indigent is not required by South Dakota statute. No pro-vision exists for serving notice on those

whose property is attached by the lien. The failure to notify Claussen of the lien is egregious, yet, alone, insufficient to discharge the statutory lien.

As a matter of law, the Court finds the instant matter ripe for adjudication. Ripeness involves an active case in controversy. *See Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974); *Combustion Equip. Associates, Inc. v. U.S. E.P.A.*, 73 B.R. 85, 87 (S.D.N.Y. 1987) *aff'd*, 838 F.2d 35 (8th Cir.1988). Claussen suffers actual damages in an amount of at least his house's $6,000 value, as it is encumbered if the indigent lien is not held dischargeable. Claussen claims entitlement to the homestead exemption under S.D.C.L. § 43–31–1, which ceiling is $30,000 per S.D.C.L. § 43–45–3. Claussen's $6,000 house lies well within the homestead exemption's limit. South Dakota exemptions are at issue because the state, as permitted by Section 522(b), opted out of Section 522(d)'s federal exemptions. S.D.C.L. § 43–31–30; *see In re Bowen*, 80 B.R. 1012, 1017 (Bankr.D.S.D.1987). States have authority to designate exemptions for their residents, but Congress reserved to itself the power to determine discharges. 11 U.S.C. §§ 523(a), 727, 1141(c), 1228, 1328.

## II. The Automatic Stay and Perfection.

It is axiomatic that filing a bankruptcy petition operates as an automatic stay of all judicial and nonjudicial proceedings against a debtor or his property. 11 U.S.C. § 362(a). The automatic stay is bankruptcy's cornerstone. Without it, creditors would dissipate the debtor's assets, causing piecemeal adjudication of a bankruptcy case, impairing a realistic opportunity to reorganize, and damaging any orderly equitable distribution to creditors. *Midlantic Nat'l Bank v. N.J. Dep't of Environmental Protection*, 474 U.S. 494, 503, 106 S.Ct. 755, 760, 88 L.Ed.2d 859 (1986); *In re Stringer*, 847 F.2d 549, 551 (9th Cir.1988); *In re Corporacion de Servicios Medicos Hosp. de Fajardo*, 60 B.R. 920, 930 (D.P.R. 1986), *aff'd*, 805 F.2d 440 (1st Cir.1986). The automatic stay is a fundamental injunction shielding Claussen.

Actions violating the automatic stay are null. *Corporacion de Servicios,* 60 B.R. at 930. Federal bankruptcy law preempts any state regulation which would interfere with the same. *Id.* A creditor's failure to voluntarily turn over property taken lawfully prepetition may constitute a violation of the automatic stay. *See In re Knaus,* 889 F.2d 773 (8th Cir.1989). Bankrupt estates, entities the automatic stay is designed to protect, are unaffected by a levy. *Laughlin v. I.R.S.,* 912 F.2d 197 (8th Cir.1990). Even creditor shenanigans, prompted in response to a bankruptcy petition filing, violate the automatic stay and subject the violator to contempt sanctions. *In re Guinn,* 102 B.R. 838, 841 (Bankr.N. D.Ala.1989) (credit union cannot call in loan early in attempt to make debtor a "Chinese Dissident" example for other borrowers debating bankruptcy); *In re Sechuan City, Inc.,* 96 B.R. 37, 44 (Bankr.E.D.Pa.1989) (lessor hotel, posting signs declaring lessee debtor diner filed bankruptcy, in an effort to shame debtor into paying debt, violated the automatic stay); *In re Olson,* 38 B.R. 515, 518 (Bankr.N.D. Iowa 1984) (a creditor refusing to provide medical care to a bankrupt on a cash basis violates the automatic stay). Bankruptcy courts are loath to tolerate automatic stay violations and are vested with authority under Section 362(h) to assess punitive damages against violators, including governmental entities. *See U.S. v. McPeck,* 910 F.2d 509 (8th Cir.1990). Unless bankruptcy courts vigorously apply Congress' automatic stay, the Bankruptcy Code would prove meaningless legislation.

The automatic stay applies to all of the property held by the debtor's estate. 11 U.S.C. § 541. Great weight is placed on preserving the value of a debtor's estate. *Midlantic,* 474 U.S. at 502, 106 S.Ct. at 760. By operation of law, Claussen became a fee simple owner of real estate held in joint tenancy with his wife, Lilly, upon her death. S.D.C.L. § 43–2–13. The home in Elkton is part of Claussen's bankruptcy estate. S.D.C.L. § 28–14–6 subjects the lien on the indigent's property to joint tenancy homestead interests, which affects Claussen's home. Furthermore, S.D.C.L.

§ 25–7–1, –5 requires that a spouse provide for his or her spouse's necessities. Claussen bore liability for Lilly's hospital bills due Sioux Valley Hospital, concurrent with the County's lien.

11 U.S.C. § 362(a)(4) provides: "Except as provided in subsection (b), a [bankruptcy] petition ... operates as a stay, applicable to *all entities,* of ... any *act* to create, perfect, or enforce any lien against property of the estate[.]" (emphasis added). Statutory analysis of whether the County lien violated the automatic stay focuses on: the County as an "entity"; whether the lien arose by an "act"; and whether an exception to the automatic stay exists.

■ Both public and private creditors of the debtor are subject to the automatic stay. *See Small Business Admin. v. Rinehart,* 887 F.2d 165, 168 (8th Cir.1989); 2 *Collier on Bankruptcy* ¶ 362.04 (15th ed. 1988). Applying the automatic stay to "all entities" codifies the prohibition against taking actions against a debtor during the pendency of bankruptcy. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6296–99; *In re Eisenberg,* 7 B.R. 683, 687 (Bankr.E.D.N.Y. 1980). Congress could not have been more inclusive in expressing which entities are stayed, since "all" means whole or a totality. *Black's Law Dictionary* 68 (5th ed. 1979). This includes those who are not creditors of the estate. *Corporacion de Servicios,* 60 B.R. at 930. Section 362(a) applied to the County as of Claussen's Chapter 7 petition date, October 24, 1989. The automatic stay affects the County, despite state statutes mandating payment to the private hospital and filing a lien against the indigent, because the Supremacy Clause of the U.S. Constitution holds federal law preempts state law where a conflict exists. U.S. Const. art. I, § 8, cl. 4; art. 6, cl. 2; *Perez v. Campbell,* 402 U.S. 637, 644, 91 S.Ct. 1704, 1708, 29 L.Ed.2d 233 (1971); *In re Universal Money Order Co.,* 470 F.Supp. 869, 873 (S.D.N.Y.1977).

■ Any "act," under 11 U.S.C. § 362(a)(4), includes preventing the creation or perfection of a lien, even a statutory lien. *In re Parr Meadows Racing Ass'n, Inc.,* 880 F.2d 1540, 1546 (2d Cir. 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990); *In re Shoreham Paper Co.,* 117 B.R. 274 (Bankr.W.D. Mich.1990); *Matter of Ballentine Bros., Inc.,* 86 B.R. 198, 201 (Bankr.D.Neb.1988); *In re Cummings Market, Inc.,* 53 B.R. 224, 225 (Bankr.D.Vt.1985). The tax liens in *Parr Meadows* and *Shoreham Paper* arose by statute and were discharged for want of an act of perfection. Bankruptcy's overriding policy of rehabilitation empowers the bankruptcy court to enjoin the assessment of taxes in order to protect its jurisdiction and administer the estate in an orderly and efficient manner. *Laughlin,* 912 F.2d 197; *Bostwick v. U.S.,* 521 F.2d 741, 744–46 (8th Cir.1975). Enjoining tax and other government assessments is authorized by the automatic stay. Section 362(a) prevents the County from taking any collection "act" against Claussen.

■ The indigent lien statutes require at least one "act" occur before the lien attaches. The county lien becomes "effective" between the county and the indigent immediately upon payment by the county. S.D.C.L. § 28–14–5. The county auditor physically filing the indigent lien under S.D.C.L. § 28–14–7 is a second act required by South Dakota statute. The indigent county lien filed against Claussen never arose passively by some operation of South Dakota law, but, rather, creation and attempted perfection occurred as a direct result of the County paying Sioux Valley Hospital and filing its lien. Even if the county lien was perfected and created without any County action, such lien attaching to property post-petition would violate the automatic stay. *Parr Meadows,* 880 F.2d at 1545; *H & H Beverage Distribs. v. Dep't of Revenue of Commonwealth of Pa.,* 850 F.2d 165, 170 (3d Cir.1988), *cert. denied,* 488 U.S. 994, 109 S.Ct. 560, 102 L.Ed.2d 586 (1988); *In re Bellman Farms, Inc.,* 86 B.R. 1016, 1020 (Bankr.D.S.D.1988). The County's post-petition acts of lien creation via payment and filing the lien are null as automatic stay violations.

III. The Ability to Discharge an Inchoate Statutory Lien.

 Generally, state law determines the existence and perfection of a lien. *Matter of Higgins*, 304 F.Supp. 108, 110 (D.S.D.1969); *Johnson Memorial Hosp. v. Hess*, 44 B.R. 598, 600 (W.D.Va.1984); *In re Dakota Country Store Foods, Inc.*, 107 B.R. 977, 991 (Bankr.D.S.D.1989). Under federal law, a state-created lien is not perfected until there is nothing more to do to possess a choate lien. *U.S. v. J.H.W. & Gitlitz Deli & Bar, Inc.*, 499 F.Supp. 1010, 1015 (S.D.N.Y.1980). Statutory lien enforcement depends on its perfection status as of the petition date. *In re Pierce*, 809 F.2d 1356, 1361 (8th Cir.1987). South Dakota state law determines perfection of its state statutory lien.

Lien perfection is crucial because unperfected security interests are dischargeable absent a narrow exception. 11 U.S.C. §§ 523(a), 727. Unperfected security interests are generally dischargeable. As to most claims, the trustee is given the status of a hypothetical judgment lien creditor with power to avoid interests not perfected. 11 U.S.C. § 544. Statutory liens enjoy heightened protection since, in order to be defeated, the liens must either: arise due to the bankruptcy petition being filed; be unable to maintain priority over a bona fide purchaser; or arise from rent. 11 U.S.C. § 545.

 A lien arising by force of statute, without prior consent between the parties and not obtainable through judicial means by other creditors, is a statutory lien. 11 U.S.C. § 101(47); *In re Holt*, 11 B.R. 797, 800 (Bankr.W.D.Pa.1981). Non-county medical service creditors cannot use the judicial system to void an otherwise-valid South Dakota homestead exemption, and consent is not required to create the indigent lien between the ill indigent and the county. South Dakota's indigent medical services lien is a statutory lien. Claussen's discharge motion must survive Section 545's statutory lien analysis.

 Section 545(2) provides: "The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent such lien ... is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists[.]" Statutory liens, not enforceable on the date of the petition against the bona fide purchaser, are voidable. S.Rep. No. 989, 95th Cong., 2d Sess. 85 (1978); H.R.Rep. No. 595, 95th Cong., 1st Sess. 371, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6327; *In re Nucorp Energy, Inc.*, 902 F.2d 729, 733 (9th Cir.1990); *Parr Meadows*, 880 F.2d at 1545; *In re Tropicana Graphics, Inc.*, 24 B.R. 381, 382 (Bankr.C.D.Cal.1982). To be enforceable, a lien must be in effect on the petition date or at least relate back to the petition date.

The indigent lien arose in December, 1989, under S.D.C.L. § 28–14–1, when the County paid Sioux Valley Hospital. As discussed in Section I, no binding authority supports the theory that the indigent lien relates back to the date medical services were provided. Statutory liens should be strictly construed. *Jefferson County Co-op Ass'n v. Northeast Kansas P.C.A.*, 73 B.R. 3, 5 (D.Kan.1982). The indigent lien, rising by payment, is effective on third parties having "actual knowledge." S.D.C.L. § 28–14–5. Section 545(2) gives the trustee bona fide purchaser status, so no actual knowledge is imputed.

County payment occurred nearly two months post-petition. The indigent lien did not even exist on Claussen's petition date. A hypothetical, bona fide purchaser could have bought Claussen's house free and clear of the County's lien on the petition date. The indigent lien is too fragile to survive a transfer of Claussen's unencumbered home to a bona fide purchaser on the petition date. The County's indigent lien lacked perfection. The automatic stay prohibits post-petition perfection of the County's lien. Section 545(2) defeats the County's lien. Absent a bankruptcy exception to post-petition perfection of a lien, the County's emergency medical services lien is inchoate and dischargeable.

11 U.S.C. § 362(b), particularly Subsection (3), provides an exception from the automatic stay enabling limited perfection of statutory liens. Statutory exceptions to the automatic stay are interpreted narrowly and in accord with their underlying rationale. *Stringer*, 847 F.2d at 552.

Section 362(b)(3), in pertinent part, provides: "The filing of a [bankruptcy] petition ... does not operate as a stay ... of any act to perfect an *interest in property* to the extent that the trustee's rights and powers are subject to such perfection under section *546(b)* ... or to the extent that such act is accomplished within the period provided under section *547(e)(2)(A)* [.]" (emphasis added). Both Sections 546(b) and 547(e)(2)(A) must be addressed.

Section 546(b) subjects the trustee's avoidance powers to any applicable law permitting perfection of an interest in property to be effective against an entity that acquires rights in the property before perfection. South Dakota indigent liens require payment before a county's lien arises. Section 546(b) is inapplicable because no rights were acquired until payment in December, 1989, nearly two months after Claussen filed Chapter 7.

Section 547(e)(2)(A) provides a transfer takes effect if it is perfected at or within ten days of the transaction. A transfer cannot occur until the debtor obtains rights in property transferred. 11 U.S.C. § 547(e)(3). The transaction of value in property transferred to Lilly, receiving emergency medical services, transpired in March and April of 1989. This transaction directly resulted in medical services furnished to Claussen's wife. Lilly and Claussen obtained the benefit of the services supplied. No privity existed between Claussen and the County in the Spring of 1989. At best, the County acted as a statutory guarantor when Sioux Valley Hospital provided emergency medical services. The County acting to perfect its lien nearly two months after Claussen filed bankruptcy fails to meet the narrow criteria of ten days post-transfer, ten days after the petition date, or even twenty days after both events.

The County misses Section 546(b)'s purpose. The relatively narrow purpose of permitting a creditor to file within ten days of a bankruptcy petition is to protect the creditor who would be afforded perfection under state law but was surprised by the intervention of a bankruptcy petition. H.R.Rep. No. 595, 95th Cong., 1st Sess. 371, *reprinted in* 1978 U.S.Code Cong. & Admin.News 6327; S.Rep. No. 989, 95th Cong., 2d Sess. 86, *reprinted in* 1978 U.S. Code Cong. & Admin.News 5872; *Parr Meadows*, 880 F.2d at 1546; *Shoreham Paper*, 117 B.R. 274. Clearly, the County cannot argue surprise or prejudice when Sioux Valley Hospital provided notice to the County some six months earlier.

The policy protecting the surprised creditor is in accord with the Uniform Commercial Code. *See* S.D.C.L. §§ 57A–9–301(2), –312(3)(b), (4). U.C.C. §§ 9–301(2) and –312(3)(b) address the purchase-money security agreement which infuses new value. U.C.C. § 9–312(3)(b), (4) requires action within twenty days of a transfer. The Bankruptcy Code's protection of new-value infusions is recognized in 11 U.S.C. § 547. Section 547(b) avoids, as a preference, a transfer of value on account of an antecedent debt. Section 547(c) does not avoid a transfer of property by the debtor so long as value is contemporaneously given. *Cimmaron Oil Co., Inc. v. Cameron Consultants, Inc.*, 71 B.R. 1005, 1010 (N.D.Tex. 1987). The valuable medical services benefited Claussen in the Spring of 1989. The County's December payment benefited the hospital directly, not Claussen. Also, the earmarking doctrine does not apply because the County's lien results in a diminution of Claussen's estate. *See In re Bohlen Enters, Ltd.*, 859 F.2d 561 (8th Cir. 1988).

Section 547(c)(6) deems a statutory lien not a preference so long as Section 545 does not void the interest. Section 545(c)(6) is inapplicable in the instant matter, as the Court, above, held Section 545 avoids the County's unperfected lien. Forbearance of perfection of a statutory lien is not new value as the term is used in Section 547(a)(2) and (c)(1). *In re Nucorp Energy*,

*Inc.*, 80 B.R. 517, 519 (Bankr.S.D.Cal.1987). A lien arising from a county government's obligatory payment to a hospital for services provided an indigent nearly eight months earlier is an antecedent debt. Antecedent debts are not intended to be protected or perfected via Sections 546(b) or 547.

With such considerations at hand and after examining the provisions of the indigent emergency medical care statutes, this Court holds that the County obtained an "interest in property," sufficient to fall under Section 546(b), on December 19, 1989, and not prior. An assessment on Claussen's property expressly occurred via South Dakota statute on that date. Had perfection been possible, the County would have obtained a real and identifiable interest in the property which could not be dislodged by subsequent events. *Parr Meadows*, 880 F.2d at 1548. However, Claussen's bankruptcy thwarted the County's lien perfection attempt. Sections 547(e) and 546(b) have not been proven applicable.

Congress wisely designed bankruptcy law to cover the complete jurisprudence of law and equity. *In re Mitchell*, 55 B.R. 700, 702 (E.D.N.C.1985). It did not intend to reward those who slept on their rights by not exercising available means to perfect them. *Id.* The County's claim is avoided and discharged as an unsecured statutory debt since its post-petition perfection was null. The dischargeability of the County's lien under bankruptcy's fresh start policy, a policy of such overriding importance that it cannot be ignored, warrants discussion.

IV. Discharge of the Transaction Underlying the Statutory Lien.

 Two underlying reasons our forefathers constitutionally mandated uniform bankruptcy include rehabilitation of debtors by a fresh start and a scheme of equitable distribution between creditors. The Bankruptcy Act of 1898 strived to rehabilitate debtors, granting a fresh start. *Blanchette*, 419 U.S. at 110, 95 S.Ct. at 342. Congress' primary objective in enacting the Bankruptcy Reform Act of 1978 was to give debtors a "fresh start, free from the worries and pressures of oppressive debt." H.R.Rep. No. 595, 95th Cong., 1st Sess. 125 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6086; *In re Morris*, 10 B.R. 448, 450 (Bankr.N.D.Iowa 1981), *modified on other grounds*, 21 B.R. 816 (Bankr.N.D.Iowa 1982). A focal policy of bankruptcy is an equitable and rational distribution of a debtor's assets among creditors. *In re Lewis W. Shurtleff, Inc.*, 778 F.2d 1416, 1420 (9th Cir.1985). States, by means of their own laws, can never devise preferences among creditors which federal law does not acknowledge. *In re Universal Money Order Co.*, 470 F.Supp. 869, 873–74 (S.D.N.Y.1977).

Bankruptcy's fresh start spirit utilizes equitable and legal powers of the bankruptcy court to achieve such ultimate end. *In re Clark*, 105 B.R. 753, 757 (Bankr.S.D.Ga. 1989); *In re Steele*, 26 B.R. 233, 235 (Bankr.W.D.Ky.1982). An essential element of the bankruptcy power is the power to determine which of the debtor's debts shall be discharged. *Blanchette*, 419 U.S. at 109, 95 S.Ct. at 342. Financial rehabilitation, the ultimate goal of bankruptcy law, may not be achieved without discharging debts to give debtors a fresh start.

Congress provides a fresh start by making most debts dischargeable viz a choice of bankruptcy chapters. *See Davenport*, 110 S.Ct. at 2134; *Kelly v. Robinson*, 479 U.S. 36, 50, 107 S.Ct. 353, 361, 93 L.Ed.2d 216 (1986). Even limited income and real estate tax liens are dischargeable. 11 U.S.C. § 523(a)(1); *Parr Meadows*, 880 F.2d at 1546; *Shoreham Paper*, 117 B.R. 274. In addition to taxes being dischargeable, other obligations owing to a state have been held dischargeable. *Davenport*, 110 S.Ct. at 2134 (criminal restitution debt for welfare fraud dischargeable); *In re Crisp*, 521 F.2d 172, 175 (2d Cir.1975) (debtor's statutory obligation to reimburse Connecticut for institutional care at a state psychiatric hospital held dischargeable).

*Davenport* involved a Pennsylvania state court ordering Edward and Debora Davenport to pay criminal restitution instead of

sentencing them prison time for their defrauding the Pennsylvania Department of Public Welfare. 110 S.Ct. at 2129. The Davenports accepted the restitution order only to file bankruptcy when payment was demanded. The Supreme Court discharged the debt under Chapter 13, noting Congress does not prohibit discharge of a "claim." *Id.* at 2133. The Supreme Court recognized the difference in a Chapter 7 versus a Chapter 13 by referencing Chapter 7's discharge limits acknowledged in *Kelly v. Robinson,* 479 U.S. 36, 50, 107 S.Ct. 353, 361, 93 L.Ed.2d 216 (1986). *Id.* 110 S.Ct. at 2129. Claussen filed Chapter 7, but the different chapters are irrelevant in the instant matter since the discharges afforded Chapter 7 versus Chapter 13 debtors are nonapplicable, as Claussen never committed fraud or any other Sections 523(a) and 727 discharge-prohibited act. Claussen's medical services debt is not economically or equitably any worse than the Davenports' fraud, since they possessed an intent to defraud; whereas, Lilly needed no scienter to take ill.

A framework of law discharging the debts of criminals committing fraud, yet sentencing the innocent hospitalized pauper to a lifetime of nondischargeable medical debt, would require eliminating any scintilla of equity. Such law would be absurd. Bankruptcy is a court of equity. An unforeseen catastrophic injury, resulting in a large unanticipated medical bill, is a scenario in which Congress intends the fresh start to apply and lift a debt's unyielding yoke from the poor's shoulders. A technicality of law cannot pervert Congress' clear intent. The County asks the Court to find its indigent medical lien nondischargeable by Bankruptcy Code technicality in spite of the fresh start policy. South Dakota's indigent lien purports to forever burden Claussen since, once perfected, the debtor's homestead exemption ceases to exist and discharge can never be obtained.

■ Filing bankruptcy with a large medical bill is not unreasonable nor illegal. *See In re Smith,* 113 B.R. 579 (Bankr.D.N.D.1990). No abuse of Chapter 7 exists when an honest debtor seeks to avail him-

self of a fresh start, without the encumbrance of life-long debt, through obtaining a bankruptcy discharge. *In re Edwards,* 50 B.R. 933, 936 (Bankr.S.D.N.Y.1985). A debtor's request for a fresh start to include the homestead exemption is reasonable and not something greedy like a "pigs and hogs" approach. *Smith,* 113 B.R. at 587; *see In re James,* 31 B.R. 67 (Bankr.D.S.D. 1983). Also, state officials may not discriminate against a debtor following discharge of debts. 11 U.S.C. § 525; *Corporacion de Servicios,* 60 B.R. at 930. Claussen's bankruptcy is not illegal and his homestead exemption request is not a wrongdoing. The case law, the legislative history, and 11 U.S.C. § 523 gleam clear Congress' intent to make debts owed federal, state, and local governments dischargeable with narrow exceptions.

■ Exceptions to dischargeability are strictly construed in favor of the bankrupt to further the policy of affording debtors a broad discharge and an effective fresh start. *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915); *Matter of Cross,* 666 F.2d 873, 879 (5th Cir.1982); *Imants Seperis v. Campbell's Supply Co.,* 454 F.2d 195, 196 (3d Cir.1972); *In re Delaine,* 56 B.R. 460, 464 (Bankr.N.D.Ala.1985); *In re Brown,* 43 B.R. 613, 614 (Bankr.M.D.Tenn.1984). Narrowly construed discharge exceptions avoid leaving debtors with unmanageable debt loads in contravention of the fresh start. The burden of proof as to discharge rests on the creditor resisting discharge, and the court is to focus on bankruptcy's fresh start policy. *Clark,* 105 B.R. at 757–58; *Delaine,* 56 B.R. at 464. The County bears the burden of proof to establish its medical services lien, even if timely filed, is nondischargeable. Federal law controls dischargeability. 11 U.S.C. §§ 523(a), 727, 1141(c), 1228, 1328.

■ Characterization of a debt in a bankruptcy proceeding is a federal question governed by federal law and policy. *In re Brace,* 13 B.R. 551, 554 (Bankr.N.D. Ohio 1981). Bankruptcy courts look to substance, not being inhibited by the facade of form. *See In re Thurman,* 901 F.2d 839

(10th Cir.1990). To characterize the County's claim, the Court examines substance, refusing to don blinders and look only at form.

■ Claussen's simple facts ferret out a medical debt, a claim normally dischargeable in bankruptcy. Lilly checked into Sioux Valley Hospital on an emergency basis. The hospital notified the County of indigent care provided. The County paid the bill and filed a lien against Claussen. Peeling back the statutory gloss exposes a simple hospital bill claim for medical services given Lilly. Hospital debts are dischargeable. *In re Catalano*, 98 B.R. 168, 170 (Bankr.W.D.N.Y.1989). Unsecured debt is dischargeable in bankruptcy absent a narrow exception. 11 U.S.C. §§ 523(a), 727. The Court characterizes the County's claim as a medical claim, dischargeable but for the special status provided under South Dakota statutes.

Nearly the same matter as Claussen's plight was addressed by the Second Circuit applying the Bankruptcy Act in *In re Crisp*, 521 F.2d 172 (2d Cir.1975). In *Crisp*, the court discharged a medical statutory lien owed the State of Connecticut. *Id.* at 175. The court, unable to cite a specific discharge statute, characterized the debt, by analogy, to fit a permitted discharge provision and relieved the debtor. Connecticut's statutory lien is similar to South Dakota's indigent lien in that the lien remains a liability of the indigent in hopes that, one day, the debtor may acquire a windfall and satisfy the hospital bill. *Id.* at 176. The court found Leonard Crisp to be an honest debtor. The Second Circuit held that not discharging Leonard would frustrate the remedial purpose of the Bankruptcy Act and never clear the debtor of the pressure and discouragement of pre-existing debt. *Id.* at 177.

Precedence *Crisp* relied on included *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), and *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). These cases respectively hold that discharging a statutory lien does not violate the U.S. Constitution's Eleventh Amendment and discharge is ap-

propriate in order to fulfill the rehabilitative purpose of bankruptcy. *Crisp's* rationale of the fresh start and rehabilitation remains as solid law under the Bankruptcy Code as it was under the Bankruptcy Act. The Court finds *Crisp* persuasive to discharge the County's lien despite its statutory status, even had it timely perfected. *Crisp* utilized the Bankruptcy Act, but the rehabilitative and fresh start policies were carried forward and enhanced into the Bankruptcy Code. Although the care provided Lilly was government, rather than private, funds, the analogy to a normal hospital services claim seems appropriate. *Crisp*, 521 F.2d at 175. Simple analogy of treating a medical bill paid by the state the same as a nonstatutory lien a private individual is liable for provides dischargeability. The County should be entitled to any third-party-provided benefits such as insurance or nonexempt assets, but, absent such assets, Claussen needs a fresh start.

The status shrouding the County's favored lien must be stripped away because nothing magical sustains the nondischargeable status of a mere medical debt in light of Congress' overriding purpose to give debtors a fresh start. Refusing to discharge a thinly veiled medical claim, labeled a statutory lien, is unconscionable considering Claussen could never get a discharge and the underlying transaction is otherwise dischargeable. Furthermore, South Dakota indigent lien statutes attempt to place the County in a superior position. To uphold a mere hospital claim nondischargeable due to statutory designation, while other medical liens are discharged, violates the well-recognized bankruptcy law that like-situated creditors be treated similarly and equitably. *Moulded Products, Inc. v. Barry*, 474 F.2d 220, 221 (8th Cir.1973), *cert. denied*, 412 U.S. 940, 93 S.Ct. 2779, 37 L.Ed.2d 400 (1973).

Absent the statutory and exemption aura, the County is an unsecured creditor holding a mere medical services claim. Such a claim, even reduced to a judgment, does not defeat South Dakota's homestead exemption, as it is nonconsensual. *See* S.D.C.L. § 43–31–1, *et seq*. While the

County's ability to collect its compulsory payment for an indigent's medical care becomes adversely affected upon the filing of a bankruptcy petition, it is also true that if bankruptcy fails to bridle government collection activity, significant portions of the bankrupt's estate would be taken and the ability to reorganize, in general, seriously impaired. *Gardner v. New Jersey*, 329 U.S. 565, 577, 67 S.Ct. 467, 473, 91 L.Ed. 504 (1947). The Bankruptcy Code's fresh start doctrine, the substance of the county lien's underlying transaction being a medical claim dischargeable absent the medical lien's statutory mystique form shrouding the debt, fair treatment of creditors, and equity warrant the county lien avoided and discharged even if the County timely perfected. Moreover, constitutional grounds provide a compelling reason to discharge a state statutory lien.

V. The Statutory Lien and Uniform Bankruptcy Law.

 U.S. Const. art. I, § 8, cl. 1, in salient, provides: "The Congress shall have Power ... To establish ... *uniform* laws on the subject of bankruptcy throughout the United States[.]" (emphasis added). Uniformity of bankruptcy law must be geographical. *See Ry. Labor Executives Ass'n v. Gibbons*, 455 U.S. 457, 102 S.Ct. 1169, 71 L.Ed.2d 335 (1982); *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 156–61, 95 S.Ct. 335, 365–67, 42 L.Ed.2d 320 (1974); *In re Penn Central Transp. Co.*, 384 F.Supp. 895, 916 (Sp.Ct.1974); *In re Davis*, 13 F.Supp. 221, 226 (E.D.N.Y. 1936); *Matter of Reynolds*, 24 B.R. 344, 347 (Bankr.S.D.Ohio 1982). Laws and actions resulting in nonuniform bankruptcy law are struck down.

11 U.S.C. §§ 101(47) and 545 delegate to the states limited powers to designate interests in property as statutory, and such perfected interests are nondischargeable absent narrow exceptions. The state need only declare an interest as statutory and fashion perfection in conformity with Sections 101(47) and 545 to obtain a nondischargeable debt. Blatant abuse of the statutory lien power, in violation of federally recognized interests, is invalidated.

*Universal Money Order*, 470 F.Supp. at 873–74. Still, every time the state legislature meets, it has the option of creating more statutory liens. This type of exception to discharge provides a bonus to the strong-arm creditor, the strongest-arm creditor of all, the government.

A plethora of liens created by state legislatures exists. In addition to South Dakota's statutory indigent lien under S.D.C.L. § 28–14–4, the legislature enacted statutes recognizing at least another 13 liens (*e.g.*: crops in S.D.C.L. § 38–17–1; abused animals in S.D.C.L. § 40–1–5; ambulance in S.D.C.L. § 44–13–1; attorney in S.D.C.L. § 16–18–21; mechanics and materialmen in S.D.C.L. § 44–9–49; excise tax in S.D.C.L. § 10–46A–9; construction in S.D.C.L. § 44–1–4; hospitals in S.D.C.L. § 44–12–1; nuisances in S.D.C.L. § 21–10–22; occupational in S.D.C.L. § 44–11–1; innkeepers in S.D.C.L. § 44–11–5; racing in S.D.C.L. § 42–7–60; and veterinarians in S.D.C.L. § 40–27–12). A sampling of a few of South Dakota's adjacent states' laws illustrates the numerous liens state legislatures recognize, although not all may be statutory liens under the Bankruptcy Code.

Minnesota statutes recognize at least five broad categories of liens (*e.g.*: delinquent tax in Minn.Stat. § 279.15; animals in Minn.Stat. § 35.10; forestry in Minn. Stat. § 88.14; innkeepers in Minn.Stat. § 327.76; and labor and material in Minn. Stat. § 514.01, *et seq.*). At least one of the categories contains 16 subcategories of liens (labor and material liens under Minn. Stat. § 514.01, *et seq.*, include: 1) improved real estate; 2) personalty in possession; 3) nonpossessory aircraft mechanics; 4) shoeing animals; 5) timber; 6) wages; 7) services of male animals; 8) processing farm products; 9) government services; 10) environmental state clean-up action; 11) hospital; 12) launderer; 13) veterinarian; 14) agriculture production; 15) landlord; and 16) self-storage). Minnesota's social services medical assistance to paupers is similar to South Dakota's in that the homestead exemption is not valid against the lien and it applies to joint property and decedent's estates, but differs in perfection technique.

Minn.Stat. §§ 256B.15, 510.05; *In re Estate of Turner*, 391 N.W.2d 767, 768 (Minn. 1986). Minnesota's statutory liens are not uniform with South Dakota's statutory lien laws.

The adjacent state of Nebraska lists at least 17 liens recognized by its legislature. Neb.Rev.Stat. § General Index, Liens. Nebraska counties providing health care to indigents get subrogation rights and may obtain judgments. Neb.Rev.Stat. §§ 68–150, –214; *Creighton–Omaha Regional Health Care Corp. v. Douglas County*, 202 Neb. 686, 688, 277 N.W.2d 64, 67 (1979). Sister state North Dakota's legislature recognizes at least 22 liens by statute, and hospital lien perfection requires service be given to the indigent and the lien filed with the district court, which differs from South Dakota. N.D.Cent.Code § 35–18–01; *see Matter of Estate of Tuntland*, 364 N.W.2d 513 (N.D.1985). Neighboring state Wyoming lists at least 18 legislatively recognized liens, and its statutes merely provide that county hospitals must provide free medical services to indigent county residents. Wyo.Stat. § 18–8–107. The vast number and type of liens enumerated indicate the propensity of states within a close geographical region to recognize numerous and different liens.

An indigent U.S. citizen residing in South Dakota does not get perfected county-subsidized medical bill liens discharged. The same citizen residing outside South Dakota, conceivably in Nebraska where a judgment via the legal process is possible in medical assistance circumstances and judgments are dischargeable under 11 U.S.C. § 544, fortuitously gets medical care charges discharged in bankruptcy. Different discharge results, depending on geographic residency, occur due to the ability to preserve from discharge an interest in property as a statutory lien. By the grace of birth or residence, a debtor has one set of nondischargeable debts in state A and a different set in state B.

Not all the states recognize the same liens by statute. The number and type listed above differ. A factor's lien is recognized in North Dakota, but the factor

lien law was repealed in Minnesota. N.D. Cent.Code § 35–20–06; Minn.Stat. § 514.80 to .91, repealed by Laws 1965, c. 811 § 366.01–102. Statutory lien disparity broadens when comparing different geographical regions rather than focusing within one region. *In re Loretto Winery, Ltd.*, 898 F.2d 715, 719 (9th Cir.1990) (secret lien on partially processed grapes upheld); *cf. In re Bay State Yacht Sales, Inc.*, 117 B.R. 16 (Bankr.D.Mass.1990) (statutory materialmen's lien discharged as a secret lien). There is no need to compare each district subject to the Bankruptcy Code as the small sampling proves great differences in statutory lien law geographically, yielding less than uniform bankruptcy law throughout the United States.

Giving states the power to designate an interest as a statutory lien, where such perfected interest becomes nonuniform and nondischargeable, violates the Congress' use of its constitutionally derived authority to make *uniform* bankruptcy laws. Congress abrogated its responsibility to create uniform bankruptcy law by permitting the individual states to designate which debts are nondischargeable statutory liens.

Section 545 yields inequitable and nonuniform bankruptcy law. There is a breach in the dike and the floodgates of nondischargeable debt beleaguering debtors from their constitutional right to relief. The Court notes an obvious comparison readers may make between state-designated statutory liens which may be nondischargeable in bankruptcy and here held unconstitutional where nonuniform bankruptcy law results with 11 U.S.C. § 522(b)'s state opt-out opportunity of Section 522(d)'s federal exemptions. Discharge is distinguished from exemptions because the former directly affects the debtor's fundamental right to a fresh start by being freed of debt; whereas, the latter does not since it affects assets with which the debtor may survive bankruptcy. Because bankruptcy's fundamental fresh start purpose is not thwarted by exemptions, the Court limits its holding to discharge of state-created nonuniform statutory liens.

The Court respectfully rejects the reasoning of *In re Loretto Winery, Ltd.*, 898 F.2d 715 (9th Cir.1990), wherein the Ninth Circuit recognized a secret statutory lien, in part, on grounds that while a rational distribution is a central policy of bankruptcy, social, economical, or political policies justify deviations from equity. *Id.* at 718. The Ninth Circuit opinion, citing Congressional testimony, sounds good. However, just because an argument sounds good does not mean it is right. This is especially true where a Constitutional mandate is involved. *See U.S. v. Eichman,* — U.S. —, 110 S.Ct. 1779, 108 L.Ed.2d 780 (1990).

A court cannot use Congressional colloquies to overturn express laws or sanctioned joint committee reports. *See Zajac v. Federal Land Bank of St. Paul,* 909 F.2d 1181 (8th Cir.1990). Where the language is plain, the courts must enforce bankruptcy statutes according to their terms. *Ron Pair,* 489 U.S. at 241, 109 S.Ct. at 1030. The same rule should apply to unambiguous Constitutional instructions. Congress derives its bankruptcy power from the Constitution. Preemption places federal law above conflicting state law. U.S. Const. art. I, § 8, cl. 4; art. 6, cl. 2; *In re Kreisers, Inc.,* 112 B.R. 996, 998 (Bankr.D.S.D.1990). Likewise, the United States Constitution limits Congress' powers and actions. *See Granfinanciera, S.A. v. Nordberg,* — U.S. —, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). No act of Congress may violate the Constitution. *See U.S. v. Villamonte–Marquez,* 462 U.S. 579, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983). The Constitution's uniformity requirement is clear, and the Court must apply its unequivocal mandate.

The proper method to change the Constitution is by amendment to it, not by rationalizing it by the rhetoric of various policies. Economic, social, and political schemes supporting *Lorretto*, holding the federal bankruptcy distribution scheme is not violated by state-created statutory liens favoring different creditors depending on state residence, do not justify violating United States Constitution art. I, § 8, cl. 4's uniformity requirement. The reality that a given statute or procedure is convenient, effective, and useful in facilitating government operations, alone, will not save the law if it is contrary to the Constitution. *I.N.S. v. Chadha,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983). State statutory liens yielding nonuniform bankruptcy law, to the extent such liens survive bankruptcy, are hereby declared unconstitutional and, thus, avoidable and discharged. Applying the rule to the facts is all that remains.

The County's lien is nonuniform because, as noted above, jurisdictions permitting the government's interest to be reduced to a judgment would render the interest dischargeable in some states but not others, as in South Dakota. The County lien finds only Claussen's $6,000 home as an unencumbered asset. Claussen has not sold his home, and the only way to preserve the County's interest would be to make the lien nondischargeable in hopes that, one day, Claussen, or his estate upon death, will sell the dwelling. Keeping such lien alive is speculative and crushes the debtor's opportunity for a fresh start. The inability to discharge a perfected statutory medical lien in South Dakota, but being able to obtain a fresh start discharge in another jurisdiction, illustrates Congress' unconstitutional exercise of its bankruptcy powers by permitting nonuniform bankruptcy law. Therefore, the County's lien is avoided and discharged.

## CONCLUSION

A statutory lien arising by South Dakota statutes requiring a county to compensate a hospital providing its indigent residents medical services, and thereby receiving a special lien against an indigent's property, is avoided and discharged in bankruptcy on the independent bases that: 1) when the lien arises post-bankruptcy-filing through an act in violation of the automatic stay and said statutory lien is not perfected, it is avoidable and discharged; 2) Congress' fresh start mandate behind the Bankruptcy Code and fair treatment amongst creditors require a claim be avoidable and discharged

where the underlying basis, giving rise to a specially protected claim, is otherwise avoidable in bankruptcy; and 3) statutory liens yielding nondischargeable, nonuniform debts violate the United States Constitution's requirement that bankruptcy laws be uniform.

The Court will enter an appropriate order.