**In re Dennis E. and Judy E. HANSON.**

**Bankruptcy No. 92–40599.**

United States Bankruptcy Court,
D. South Dakota, S.D.

Feb. 28, 1994.

Wilson Kleibacker, Lake County State's Atty., Madison, SD, for Lake County, SD.

Michael E. Unke, Salem, SD, for debtors.

A. Thomas Pokela, Chapter 7 Trustee, Sioux Falls, SD.

PEDER K. ECKER, Bankruptcy Judge.

Dear counsel:

The matter before the court is a Motion for Avoidance of Poor Liens (Rule 4003(d)) filed by Salem, South Dakota, Attorney Michael E. Unke on behalf of Debtors and objected to by Madison, South Dakota, Attorney Wilson Kleibacker, acting as Lake County State's Attorney representing Lake County, South Dakota. The issue is whether a county, whose only privity is with a debtor's creditor, may refuse to satisfy and remove a

1. The driving force behind this petition is medical debt, primarily, the debt owed to Sioux Valley Hospital, which represents 67% of the sum total owed to the health service providers listed on Schedule F:

1. Hauge Associates (collection of
   medical debt)     $    430.30
2. Madison Community Hospital    1,187.86
3. Medical X–Ray Center    24.00
4. North Central Heart Institute    5,495.13
5. Sioux Valley Hospital    14,327.41
TOTAL:    $21,464.70

The only other creditor listed in this bankruptcy is an individual who holds a $3,700 secured claim in connection with a contract for deed transaction involving Debtors' personal residence located in Madison, South Dakota. Based on the Summary of Schedules, Debtors' total assets are $29,430, and total liabilities are $25,164.70.

2. S.D.C.L. § 28–13–33 sets forth the county's reimbursement obligations:

poor lien filed against the debtor when the lien was created after the order of discharge was granted and the order released all dischargeable debts, including the underlying debt giving rise to the lien. This letter decision constitutes Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.

## BACKGROUND

On April 28 and August 31, 1991, unemployed Debtor Dennis E. Hanson received medical services from various health care providers, including Sioux Valley Hospital. On September 28, 1992, Sioux Valley Hospital Association obtained a $14,375.91 civil judgment against Debtors, which was filed with the Lake County Clerk of Courts. Shortly thereafter, on October 5, 1992, Debtors sought bankruptcy protection and filed a voluntary Chapter 7 petition for relief.[1] On November 10, 1992, a motion was filed to avoid the judgment lien; the motion was granted January 6, 1993, and the order was served on both the hospital and the Lake County Clerk of Courts. An order granting Debtors' discharge was entered the same date, and, immediately thereafter, the Court approved the Chapter 7 Trustee's report of no assets and closed the bankruptcy estate. Two months later, on March 5, 1993, Lake County reimbursed Sioux Valley Hospital $8,971.28[2] and filed its statutory lien March 10, 1993.[3] When Lake County refused to

[W]henever hospitalization for an indigent person has been furnished by a hospital in any emergency case, the county where the indigent person has established residency shall be liable to the hospital for the expense of the hospitalization. In the case of nonemergency hospitalization assistance, the county of residence shall be liable only to the extent that the board of county commissioners, in good faith, approves any application for assistance. To the extent the county provides payment to a hospital, the county shall have the same remedies for the recovery of such expense as are provided by statute for the recovery of money expended for the relief and support of poor and indigent persons.

3. S.D.C.L. § 28–14–1 entitles the county to establish a claim for amounts reimbursed:

When any county. shall furnish relief to any person under the provisions of chapter 28–13, such county shall have a claim against the person so relieved for the value of such relief,

release the lien, Debtors filed this motion October 14, 1993, stating the county's position "not only abrogates the intention of the act of Congress, but also defeats debtors' rehabilitative efforts." An objection to the motion was filed, stating that, although the hospital's reimbursement and lien filing occurred after the discharge was granted, both acts were timely, and, since the automatic stay was no longer in effect, the Court should declare the lien to be in full force and effect. Following a hearing, the Court took the matter under advisement.

## DISCUSSION

■ Generally, liens not avoided during bankruptcy survive after bankruptcy. *In re Braun*, 152 B.R. 466 (Bankr.N.D.Ohio 1993); *In re Walker*, 151 B.R. 1006, 1009 (Bankr. E.D.Ark.1993); *In re Brouse*, 110 B.R. 539 (Bankr.D.Colo.1990); *In re Bouchelle*, 98 B.R. 81 (Bankr.M.D.Fla.1989); 11 U.S.C. §§ 524(a)(2), 727. The liens survive even if the obligation that formed the basis for the lien is discharged. *In re Dillard*, 118 B.R. 89 (Bankr.N.D.Ill.1990). A discharge granted under 11 U.S.C. § 524(a) affects the debtor's personal liability only; it does not affect the property of the estate from which debts may be satisfied. *In re Smith*, 119 B.R. 714 (Bankr.D.N.D.1990); *In re Bormes*, 14 B.R. 895, 898 (Bankr.D.S.D.1981). If a lien survives bankruptcy and there is property of the estate from which debts may be satisfied, the lien-holding creditor may pursue an *in rem* action to enforce the surviving lien. *Id.* Lien survival and the ability to pursue post-discharge lien enforcement applies only if the lien is found to be a valid, existing lien at the time the bankruptcy petition was filed. *In re Koski*, 149 B.R. 170 (Bankr.D.Idaho 1992). But what happens if the lien exists at the time of filing but is not perfected until shortly after the petition is filed? That was the issue presented to the Court in *In re Claussen*, 118 B.R. 1009 (Bankr.D.S.D.1990), offering an invitation to explore lien perfection as it relates to the ability to survive bankruptcy. A brief discussion of the case is appropriate for purposes of resolving the issue at hand.

In *Claussen*, a statutory lien existed on the date of filing, but it was an inchoate lien: Sioux Valley Hospital had provided indigent emergency medical services, gave notice to the county that services were provided,[4] and submitted its request for reimbursement to the county, all before the patient's spouse filed a voluntary Chapter 7 bankruptcy petition. *In re Claussen*, 118 B.R. at 1012. The county did not reimburse the hospital or file its indigent emergency medical services lien until roughly two months after the petition had been filed. *Id.* The issue to be resolved was whether the county's lien, perfected during the period of the automatic stay, should not be discharged in light of the fresh start policy of the Bankruptcy Code and in light of the Code's effort to provide equitable creditor treatment, especially if the underlying transaction was dischargeable. *Id.* The Court held the lien would be avoided. *Id.* Even though the Court noted that South Dakota lien laws require strict construction to permit recovery only where expressly indicated, it was the most basic tenets representing the spirit and purpose of bankruptcy that failed to offer any hope for the lien's survival. *Id.* at 1013.

There were several fundamental bankruptcy concepts which provided independent bases for discharging the lien. First, the county's post-petition acts to create the lien, specifically, reimbursing Sioux Valley Hospital and then filing the lien, were deemed null and void as violations of the automatic stay. *Id.* at 1015. Second, the lien was deemed invalid because it was not perfected on the date the petition was filed; a fatal flaw, because, to be enforceable, a lien must be in effect on the date of filing or, at least, relate back to the date of filing, and, pursuant to Section 545(2), the trustee may avoid such a lien to the extent it is unperfected. *Id.* at 1016, *citing In re Pierce*, 809 F.2d 1356, 1361

which may be enforced against any property, not exempt from execution, which such person may have or later acquire.

**4.** The county is not liable for the cost of hospitalization unless the hospital notifies the county auditor within fifteen days of an emergency admission or within seven days in the case of a nonemergency admission. S.D.C.L. § 28–13–34.1.

(8th Cir.1987). Further, the parties were aligned in such a way that the only existing privity in contract was between the indigent patient and the hospital, as opposed to the indigent patient and the county; therefore, the necessary link that might allow the lien to relate back to the prepetition time of medical services was missing. *Id.* at 1013. Third, the Bankruptcy Code's fresh start policy and scheme of equitable distribution allowed the lien to be discharged:

> [Any law that would sentence] the innocent hospitalized pauper to a lifetime of nondischargeable medical debt[ ] would require eliminating any scintilla of equity. Such law would be absurd. An unforeseen catastrophic injury, resulting in a large unanticipated medical bill, is a scenario in which Congress intends the fresh start to apply and lift a debt's unyielding yoke from the poor's shoulders. A technicality of law cannot pervert Congress' clear intent. ·

*Id.* at 1019. Finally, the Court held that laws or actions yielding non-uniform bankruptcy laws should be struck down and any blatant abuse of the statutory lien power invalidated. *Id.* at 1021. In *Claussen*, the county's lien was considered non-uniform after discovering other jurisdictions would allow a county's interest to be reduced to judgment and, ultimately, to be dischargeable—contrary to South Dakota law. For all of these reasons, the county's lien was avoided and discharged. *Id.* at 1023.

The *Claussen* result demonstrates a lack of elasticity when it comes to expanding opportunities for statutory lien survival. The rationale leading to that result is instrumental in resolving the issue of whether a statutory lien can be given full force and effect when it is timely created and perfected long after the bankruptcy case has been completed and the protection of the automatic stay has expired and when the underlying transaction giving rise to the statutory lien has already been discharged.

## DECISION

■ To an extent, the issue in this case is a variation of the *Claussen* case, and, as such, most of the same rationale resolves the question. The variation, of course, is due to factual differences between the two cases, the most obvious of which is that the medical services lien in *Claussen* was in place, albeit incomplete, when the Chapter 7 petition was filed; whereas, the medical services lien in this case was not capable of being perfected at filing because of its post-discharge genesis. The only significant fact existing on the date of this filing was that the cost of the prepetition medical services created such a financial catastrophe for Debtors that they were forced to seek the protection and relief offered by a Chapter 7 bankruptcy filing. *Claussen* provides that a lien will not survive bankruptcy if it does not exist in a perfected state on the date of filing, but the question here is not so much about an existing lien surviving bankruptcy as it is about a lien's ability to become and remain viable, for enforcement purposes, after bankruptcy.

The relationship between the parties in this case, like *Claussen*, sets forth a linear chain between Debtors, Sioux Valley Hospital, and Lake County. There is no privity between Debtors and Lake County. Only one relationship mattered during the pendency of this case, and that was the one between Debtors and Sioux Valley Hospital, which was dealt with and disposed of during the administration of the case. The January 1993 order of discharge extinguished the $14,327.41 debt owed to Sioux Valley Hospital and released Debtors' personal liability for that debt. Furthermore, there were no assets in this case that could have been used to satisfy any remaining *in rem* rights that might have existed for the hospital. As for the relationship between Sioux Valley Hospital and Lake County, it is of no consequence here, inasmuch as it was formed two months after the case was closed and, thus, lacked any connection with Debtors, which might have established an argument that Lake County's lien should relate back to the date of filing.

■ Lack of privity and lack of lien perfection at filing pale in comparison, however, to the need to preserve the desire already accomplished by the Chapter 7 discharge, that is, a financial fresh start. Congress intended to make debts owed to federal, state, and local governments dischargea-

ble with only narrow exceptions, and, even then, exceptions to dischargeability are strictly construed in favor of the debtor in order to accomplish the fresh start policy. The circumstance in this case, which necessitated a new financial beginning, illustrates what has become, perhaps, the most critical issue facing this country today: the escalating cost of health care services and the need for national health care reform. In this case, the debtor receiving medical services is unemployed and may have no health care plan at all, while the other debtor is employed as a sewing machine operator earning $1,058.82 each month in order to satisfy monthly expenses of $1,027.60. Certainly, there is no abuse to be found in seeking a clean slate by discharging an otherwise life-long medical debt through bankruptcy. Bankruptcy is a legitimate recourse for those in crushing financial despair—a haven for those driven into poverty due to uncontrolled circumstances like these.

In sum, the underlying medical services debt was discharged long before the county's statutory poor lien was ever conceived. According to the indigent lien statutes of this state, no indigent lien can arise prior to county payment. S.D.C.L. § 28–14–5. The timing of Lake County's payment to Sioux Valley Hospital and the resulting statutory lien that was created, when compared to the timing of Debtors' Chapter 7 discharge and the effect it had on the $14,375.91 judgment debt, simply offers no hope of enforcing the lien against these debtors now. The *Claussen* rationale applies, particularly with regard to lack of privity, lack of lien perfection at the time of filing, and the overall fresh start policy Congress intended to be achieved through bankruptcy. As applied, the Court is able to conclude that this statutory lien cannot be enforced because it was created after the Chapter 7 order of discharge was granted and released all dischargeable debts, including the underlying medical services debt which gave rise to the county's statutory poor lien. The motion is granted, and the Court will enter an appropriate order.