Eliezer Barrios VELAZQUEZ; Myrta Nieves Vega and Isidro Collazo, in their personal capacity and as representatives of "Comité de Delegados y Miembros Pro Sana Administración de Aeela (SAAEELA)", Plaintiffs,

v.

ASOCIACION DE EMPLEADOS DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO, also known as Aeela; Isaac Neftali Rojas Nater, Roberto Aquino Garcia and Miguel Martinez Williams, in their personal and official capacity, Defendants.

Civ. No. 95–1828(SEC).

United States District Court,
D. Puerto Rico.

July 17, 1995.

Francisco R. González–Colón, F.R. Gonzalez Law Firm, Santurce, PR, for plaintiff(s).

## ORDER

CASELLAS, District Judge.

This matter came before the Court originally on plaintiffs' request for a temporary restraining order (TRO) and preliminary injunction against defendants the Association of Employees of the Commonwealth of Puerto Rico ("the Association"), Isaac Neftalí Rojas Nater, Roberto Aquino García and Miguel Martínez Williams. During the hearing on plaintiffs' request for an injunction, held July 6–7, 1995, defendants raised a challenge to the Court's subject matter jurisdiction. This challenge was directed to the requirement, under 42 U.S.C. § 1983, that the offending conduct be perpetrated "under color of state law", or otherwise qualify as "state action". At the time, the Court took this challenge to its jurisdiction under advisement, declining to issue a hasty ruling in the belief that the issue, as presented by the particular circumstances of this case, deserved more than the cursory review it would be able to afford it at

that preliminary stage of the proceedings. Now, having denied plaintiffs' request for a TRO and preliminary injunction, and having carefully studied the issue, we proceed to dispose of this controversy.

It is undisputed that section 1983 provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place "under color of any statute, ordinance, regulation, custom, or usage of any State or Territory." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 924, 102 S.Ct. 2744, 2747, 73 L.Ed.2d 482 (1982). In order to state a claim under § 1983, a plaintiff must show both the existence of a federal constitutional or statutory right, and a deprivation of that right by a person acting under color of state law. *Watterson v. Page,* 987 F.2d 1, 7 (1st Cir. 1993). For purposes of our discussion today, we will assume, although it is by no means evident, that plaintiffs are able to show the existence of a relevant federal constitutional right of which they are being deprived. The issue before us is therefore reduced to whether defendants acted under color of state law when they scheduled the general assembly for July 8, 1995. We find that they did not and hence, they are not subject to suit under 42 U.S.C. § 1983.

The First Circuit Court of Appeals has outlined the inquiries relevant to the determination of when conduct by apparently private parties rises to the level of state action or action under color of state law[1]: (1) whether there is an elaborate financial or regulatory nexus between defendants and the government of Puerto Rico which compelled defendants to act as they did, (2) an assumption by defendants of a traditionally public function, or (3) a symbiotic relationship involving the sharing of profits. *Rodríguez–García v. Davila,* 904 F.2d 90, 96 (1st Cir.1990) (citing *Ponce v. Basketball Federation of the Commonwealth of Puerto Rico,* 760 F.2d 375, 377 (1st Cir.1985)). Respectively, these tests are sometimes referred to

as the state compulsion test, the nexus/joint action test, and the public function test. *Rockwell v. Cape Cod Hosp.,* 26 F.3d 254, 257 (1st Cir.1994). We apply these in turn to the facts of this case, to determine whether the Association can be deemed a state actor.

Before proceeding to our discussion however, it is worthwhile to note that at least two courts have already examined the issue before us. Significantly, both the Puerto Rico Supreme Court and the United States District Court for the District of Puerto Rico, in the person of Judge Torruella, have held that the Association is not an agency, department or instrumentality of the Government of Puerto Rico, and therefore its actions, and those of its members cannot be characterized as state action. *AEELA v. Bernabé Vázquez Pérez,* 92 J.T.S. 52 (1992); *Asdrúbal Morales v. Juan A. Chaves,* (Torruella, J.) Civil No. 75–1087, Opinion and Order of December 9, 1975. While plaintiffs' counsel correctly points out that these precedents do not represent binding authority on this Court, they nevertheless provide an excellent discussion of some of the relevant considerations involved in the resolution of this issue. Nevertheless, we embark on our own independent analysis of the matter.

1. *Nexus Analysis*

In the past, courts have focused on the degree of government regulation and the extent of financial support provided by the government to determine whether a sufficiently close nexus exists between the State and the challenged action of the regulated entity, so that the latter may be fairly treated as that of the State itself. *See Ponce v. Basketball Feder. of Com. of Puerto Rico,* 760 F.2d at 377; *Rodríguez–García v. Dávila,* 904 F.2d at 96; *Rockwell v. Cape Cod Hosp.,* 26 F.3d 254, 258 (1st Cir.1994). In *Rockwell* for example, plaintiff brought a § 1983 action against a hospital and two private physicians alleging that they involuntari-

---

**1.** In cases under § 1983, "under color" of law has been consistently treated as the same thing as the "state action" requirement under the Fourteenth Amendment. *Rendell–Baker v. Kohn,* 457 U.S. 830, 838, 102 S.Ct. 2764, 2769–70, 73 L.Ed.2d 418 (1982). In both instances the ulti-

mate issue to be determined is whether the alleged infringement of federal rights is fairly attributable to the State. *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2753–54, 73 L.Ed.2d 482 (1982).

ly restrained her, admitted her to the hospital and gave her medication. The district court dismissed and plaintiff appealed. The First Circuit held that under the relevant tests, private physicians and a private hospital who involuntarily admit a mentally disturbed person pursuant to a state statute do not act "under color of state law" and thus, are not subject to suit under § 1983. *Id.* Significantly, in its analysis into whether there existed a close nexus between the State and the Hospital, the court made clear that even extensive government regulation and the receipt of government funds are insufficient to establish that an entity acted under color of state law. *Rockwell*, 26 F.3d at 258; *See also, Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2785–86, 73 L.Ed.2d 534 (1982). Similarly, in *Ponce v. Basketball Feder. of Com. of Puerto Rico, supra*, the First Circuit found that even extensive regulation of amateur sports on the part of the Commonwealth of Puerto Rico's Sports and Recreation Department did not serve to turn the actions of the Basketball Federation, a private sporting organization established to oversee and direct amateur basketball in Puerto Rico, into state action for the purposes of making it amenable to suit under § 1983. *Id.* at 378. The First Circuit also found that the government's financial assistance, both direct, in the form of office space and payment of utilities and maintenance, and indirect, through the Olympic Committee and in the form of beneficial contracts for the use of government stadiums, were not enough to constitute state action absent proof that these subsidies contributed directly to the Federation's decision to engage in the challenged conduct. *Id.* at 380–381. *Accord, Rodríguez–García v. Dávila*, 904 F.2d 90, 97 (1st Cir.1990) (the fact that Puerto Rico Marine Management, Inc. receives $10 million per year in state subsidies does not justify a conclusion of state control); *Rendell–Baker v. Kohn*, 457 U.S. 830, 840–43, 102 S.Ct. 2764, 2770–72, 73 L.Ed.2d 418 (1982) (a private school which taught children with special needs and received ninety percent of its funds from the government and was extensively regulated was not a state actor within the meaning of § 1983).

In this case, the Association is a corporation created by law, whose purpose is to stimulate savings and make loans to government employees. 3 L.P.R.A. § 862(b). It is an entity governed by its own Board of Directors, which is in turn elected by delegates who are themselves elected representatives of the membership at large. Membership is compulsory for permanent employees of government agencies, and voluntary for employees of public corporations. These employees manage their organization seemingly without interference from government agencies or instrumentalities. Moreover, questions of policy are decided by the Association's Board of Directors rather than by the government. In addition, the Puerto Rico Supreme Court has identified several factors that distinguish the Association from a traditional governmental unit. These include the fact that (1) the Association has the capacity to sue and be sued, (2) its Board of Directors can initiate business transactions on behalf of the Association to acquire or possess goods in furtherance of its goals, (3) it can transfer, sell, encumber, permute, transfer, option, lease or otherwise dispose of its property, (4) it is authorized to take out loans and guarantee their payment, together with interest therefrom, and (5) it can mortgage or pledge the Association's property. *AEELA v. Bernabé Vázquez Pérez*, 92 J.T.S. 52 (1992) at 9462–9463; 3 L.P.R.A. § 862(f). Significantly, the Association's sole source of income is derived from a three (3%) percent deduction from all salaries. Put another way, the funds that provide the capital for the Association come from the salaries of its members; they are not public funds. In *AEELA v. Bernabé Vázquez Pérez, supra*, the Puerto Rico Supreme Court concluded that even though the Association was an entity created by law and extensively regulated by the government, it could not be considered an agency, department or instrumentality of the government. Consequently, it was subject to the requirements and penalties imposed by the federal Truth in Lending Act, 15 U.S.C. § 1601 et seq.

As noted above, the test is whether the government exercised coercive power or provided such significant encouragement that the choice to call the general assembly for

July 8, 1995, thereby somehow "injuring" plaintiffs, must be deemed to be that of the government. *Rodríguez–García v. Dávila,* 904 F.2d at 97. Put simply, the challenged action of a regulated entity may be fairly treated as that of the State itself only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains. *Id.* (quoting *Blum v. Yaretsky,* 457 U.S. at 1004, 102 S.Ct. at 2785–86). In accordance with the above cited criteria, we conclude that there is no state action in this case, as there is no evidence that the government encouraged or affirmatively induced defendants' conduct.

### 2. *Traditional Public Function Analysis*

"In order for a private actor to be deemed to have acted under color of state law, it is not enough to show that the private actor performed a public function." *Rockwell v. Cape Cod Hosp.,* 26 F.3d at 258. Rather, plaintiff must show that the private entity assumed functions which had been traditionally the exclusive prerogative of the State. *Id.; See also, Blum v. Yaretsky,* 457 U.S. at 1005, 102 S.Ct. at 2786; *Rendell–Baker v. Kohn,* 457 U.S. at 842, 102 S.Ct. at 2772. The exclusive function test is designed to address situations where the State tries to escape its responsibilities by delegating them to private parties. *Rockwell v. Cape Cod Hosp.,* 26 F.3d at 258. In *Rendell–Baker, supra,* the U.S. Supreme Court held that although education was a public function, it was not the exclusive prerogative of the State. The Court reasoned that while the education of maladjusted high school students was a public function, that legislative policy choice in no way made those services the exclusive province of the State. *Id.* 457 U.S. at 842, 102 S.Ct. at 2772; *Ponce,* 760 F.2d at 381. The First Circuit came to a similar conclusion regarding the regulation of amateur sports in *Ponce v. Basketball Feder. of Com. of Puerto Rico, supra.* In *Rodríguez–García v. Dávila, supra,* it added the provision of maritime services to that list. Most recently, in *Rockwell,* the First Circuit found that the involuntary admission of mental patients by a hospital and private doctors was not a traditional, exclusively sovereign function of the State. Therefore, the Court found that the State was not responsible for any constitutional deprivations caused by private parties pursuant to a statutory delegation of those functions. *Id.* at 258.

■ If the provision of public education for high school students and medical services for the mentally ill do not constitute traditionally exclusive State functions, then neither does the provision of retirement and financial services for the Association's membership. In fact, the above cited cases deal with admittedly public functions which have been held not to be *traditionally* within the *exclusive* province of the State. *See Rodríguez–García,* 904 F.2d at 98. ( [T]here can be little question that, at least in Puerto Rico, maritime shipping services are essential to the well-being of the public, and thus that their provision is a public function ...); *Rendell–Baker v. Kohn,* 457 U.S. at 842, 102 S.Ct. at 2772. In this case, the Association was conceived, at least in part, in order to stimulate savings among its members. 3 L.P.R.A. 862(b). The only aspect of its function that could be characterized as public is the fact that its membership is comprised of government, sometimes called "public", employees. Consequently, we find that the provision of financial and retirement services of the kind provided by the Association to its members does not constitute a traditional public function, and therefore § 1983 liability cannot rest on that basis.

### 3. *Symbiotic Relationship Test*

The U.S. Supreme Court addressed the symbiotic relationship analysis of state action in *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). Under this test, as defined in *Burton,* the act of a private party are attributable to the State only if the government has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity. *Id.* at 725, 81 S.Ct. at 861–62. The key factor in determining the existence of a symbiotic relationship is whether the State profited from the allegedly discriminatory activity. *Ponce v. Basketball Feder. of Com. of Puerto Rico,* 760 F.2d at

**46**

382; *Rodríguez–García v. Dávila,* 904 F.2d at 98. As explained by the First Circuit in *Rodríguez–García* however, "while the fact of a financial partnership is instructive in the determination of a symbiotic relationship, the lack of that financial characteristic is not necessarily dispositive." *Id.* at 98. "The test is one of interdependence and joint participation, rather than one of financial enrichment." *Id.*

■ When these factors are taken into consideration, we come to the conclusion that there is no symbiotic relationship between the Association and the State. There is no evidence that the State somehow profits from the Association's allegedly discriminatory actions. In fact, from the evidence of record it appears that the Association is essentially independent in the conduct of its daily affairs. Consequently, we find nothing in the record to equate the Association's conduct with state action. As remarked by Judge Torruella in his Opinion and Order almost twenty years ago: "It is true that the Association was created by statute and only government employees may be members, either mandatory or voluntary. But there all relation with the Commonwealth ceases." *Asdrúbal Morales v. Juan A. Chaves,* (Torruella, J.) Civil No. 75–1087, Opinion and Order of December 9, 1975.

WHEREFORE, for the reasons stated above, we find that the Association's conduct cannot be fairly attributed to the State. *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2753–54, 73 L.Ed.2d 482 (1982). Accordingly, we hold that defendants' actions in calling and holding a general assembly, in alleged violation of plaintiffs' constitutional rights, were not taken under color of state law for the purposes of § 1983. Therefore, defendants' motion to dismiss is hereby GRANTED due to lack of state action. Judgment shall be entered accordingly.

SO ORDERED.