Rafael Velez FONSECA, Debtor.

Rafael Velez Fonseca, Plaintiff–
Appellant,

v.

Government Employees Association
(AEELA), a/k/a Asociación de Em-
pleados del Estado Libre Asociado de
Puerto Rico, Defendant–Appellee.

BAP NO. PR 15–033
Bankruptcy Case No. 12–06148–MCF
Adversary Proceeding No.
13–00184–MCF

United States Bankruptcy Appellate Panel
of the First Circuit.

December 24, 2015

Carlos C. Alsina–Batista, Esq. and Edgardo Veguilla–González, Esq., on brief for Appellant.

Javier Vilariño Santiago, Esq., and Rosario Vidal–Arbona, Esq., on brief for Appellee.

Before Feeney, Deasy, and Cary, United States Bankruptcy Appellate Panel Judges.

Deasy, U.S. Bankruptcy Appellate Panel Judge.

Rafael Velez Fonseca (the "Debtor") appeals from the bankruptcy court's May 7, 2015 Opinion and Order granting the motion for summary judgment filed by Government Employees Association, a/k/a Asociación de Empleados del Estado Libre Asociado de Puerto Rico ("AEELA"), and denying the Debtor's cross-motion for summary judgment, on the Debtor's complaint against AEELA for alleged violations of the discharge injunction imposed by § 524(a).[1] For the reasons set forth below, we **AFFIRM**.

## BACKGROUND [2]

AEELA is a "non-profit savings and loan association" established by Puerto Rico Law No. 133 of June 28, 1966, known as the "Puerto Rico Commonwealth Employees Association Act," P.R. Laws Ann. tit. 3, § 862, *et seq.* (the "Act"). *Asociación de Empleados del Estado Libre Asociado de Puerto Rico v. Unión Internacional de Trabajadores de la Industria de Automóviles, Aeroespacio e Implementos Agrícolas*, 559 F.3d 44, 46 n. 2 (1st Cir. 2009). The purpose of the Act is to stimulate savings among, establish insurance plans for, and make loans to government employees. *See* P.R. Laws Ann. tit. 3, § 862b; *see also Barrios–Velázquez v. Asociación de Empleados del Estado Libre Asociado de Puerto Rico*, 892 F.Supp. 42, 44 (D.P.R.1995), *aff'd*, 84 F.3d 487 (1st Cir.1996); *Ortiz Vega v. Asociación de Empleados del Estado Libre Asociado de Puerto Rico (In re Ortiz Vega)*, 75 B.R. 858, 860 (Bankr.D.P.R.1987). AEELA is "an entity governed by its own Board of Directors, which is in turn elected by delegates who are themselves elected representatives of the membership at large." *Barrios–Velázquez*, 892 F.Supp. at 44. "AEELA is not an agency, department or instrumentality of the Government of Puerto Rico." *Barrios–Velázquez*, 84 F.3d at 491.

The Act requires all permanent government employees to be members of AEELA, and mandates a 3% deduction from all members' salaries to be placed into a savings and loan fund. *See* P.R. Laws Ann. tit. 3, § 862c and 862g. AEELA is authorized to grant loans to its members from the savings and loan fund under unique favorable terms with competitive rates. *See* P.R. Laws Ann. tit. 3, § 862f.

The Debtor was a government employee and member of AEELA from 1986 until he retired in December 2012. In May and June of 2012, the Debtor signed two promissory notes for loans from AEELA.[3]

---

1. Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, *et seq.*

2. The parties agreed that there were no material facts in dispute.

3. There is no evidence in the record that the Debtor executed any other documents, such as a security agreement, in connection with the loans from AEELA. In a sworn statement

On August 3, 2012, the Debtor filed a chapter 7 petition. On his Schedule B, the Debtor listed $18,457.76 in his savings and dividends accounts with AEELA as part of his personal property. On Schedule D, he listed AEELA as having a claim in the amount of $27,400.64, which was partially secured by the savings and dividends accounts at AEELA and was partially unsecured in the amount of $8,942.88. On Schedule F, the Debtor listed a revolving credit account with AEELA as an unsecured non-priority debt in the amount of $1,086.00. AEELA neither filed a proof of claim nor objected to the Debtor's discharge or to the dischargeability of any specific debt. At some point, the parties agreed that the funds in the Debtor's savings and dividends accounts with AEELA served as collateral for the loans provided by AEELA. Thus, with the Debtor's consent, AEELA collected the $18,457.76 from the savings and dividends accounts as partial payment for its claims.

In September 2012, the Debtor filed a petition for retirement, and his retirement became official in December 2012. In the meantime, in November 2012, the bankruptcy court entered an order discharging the Debtor, and closed the case.

On January 9, 2013, AEELA issued a letter to the Municipality of Caguas: (1) requesting the balance of the Debtor's accumulated vacation and sick leave;[4] (2) indicating the Debtor had a pending debt balance of $7,611.28; (3) stating no payment or deduction of any kind should be processed until authorized by the bankruptcy court; and (4) indicating the letter was for "interagency purposes ... in accordance with the statutory lien established" and it should not "be deemed as a collection procedure against the [Debtor]."[5] In its response, the Municipality of Caguas certified that the Debtor had a balance of 40.87 days of accumulated vacation leave in excess of 13 days and 99.75 days of accumulated sick leave in excess of 8 days.[6]

submitted to the bankruptcy court in connection with AEELA's summary judgment motion, Sandra Santiago, supervisor of the Bankruptcy Section of AEELA's Collection Department, stated that "[t]he note sign[ed by the Debtor] to obtain the loan establish[es] the collateral[ ] for the payment of the debt [to AEELA] in case the employee ceases his work." In the promissory notes, the Debtor authorized the deduction from his salary of payments due under the notes, and also agreed as follows: "I also authorize the agency for which I work and the Secretary of the Treasury to turn over to the Association [AEELA] any check issued to me by the Commonwealth of Puerto Rico, for any reason, should I stop working for the Government of Puerto Rico or if for any other cause or reason I stop fulfilling this present obligation."

4. The letter refers in Spanish to "licencias de vacaciones y enfermedad." The parties and the bankruptcy court translated these terms to vacation and sick leave "licenses." As the certified translation of this letter included in the record refers to these terms as "sick and vacation leave," we will use the latter translation.

5. In a sworn statement submitted to the bankruptcy court in connection with AEELA's summary judgment motion, Sandra Santiago, supervisor of the Bankruptcy Section of AEELA's Collection Department, stated that these communications were part of the inter-agency notification process required by Puerto Rico law and Department of Treasury regulations when a government employee retires.

6. The bankruptcy court explained as follows: "AEELA alleges that it holds a statutory lien over Plaintiff's pre-petition vacation and sick leave [ ]. The 13 day excess in relation to vacation days and the 8 day excess in relation to sick days correspond to the post-petition vacation leave and sick leave accumulated from the date of the filing of the Chapter 7 bankruptcy on August 3, 2012, until the day that Plaintiff retired on December 31, 2012." *Velez Fonseca v. Gov't Employees Ass'n (AEELA) (In re Velez Fonseca),* 534 B.R. 261, 263 n. 9 (Bankr.D.P.R.2015).

On February 6, 2013, AEELA issued a second letter to the Municipality of Caguas stating that the bankruptcy case had concluded, and, therefore, bankruptcy court authorization was not needed to withhold the $7,611.28 owed to AEELA from the liquidation of the Debtor's accumulated vacation and sick leave. AEELA did not send any written communication directly to the Debtor giving notice of its intent to collect the $7,611.28. As of the date of the filing of this appeal, neither AEELA nor the Debtor received any money relating to the accumulated leave.

On May 22, 2013, the Debtor asked the bankruptcy court to reopen his bankruptcy case in order to file a complaint against AEELA for alleged violations of the discharge injunction. Although AEELA opposed the request, the bankruptcy court reopened the case on July 8, 2013.

The Debtor then filed a complaint against AEELA seeking damages for alleged violations of the discharge injunction based on the two letters AEELA sent to the Municipality of Caguas, which the Debtor claimed were acts to collect on a pre-petition debt that had been discharged in his chapter 7 case. In its answer, AEELA admitted it sent the two letters to the Municipality, but denied that its actions violated the discharge injunction.

Thereafter, AEELA filed a motion for summary judgment, in which it argued that it did not violate the discharge injunction because it sent the letters in question to the Municipality, as required under state law after a member has retired, and not to the Debtor in an attempt to collect a debt from him personally. It also asserted that its claim was secured by a statutory lien that rode through the bankruptcy court unaffected. According to AEELA, the accumulated leave was one of various guarantees that secured the loans it granted to the Debtor, and the statutory lien was perfected when the loans were granted. Accordingly, AEELA argued, although the discharge eliminated "in personam" liability against the Debtor, it did not affect AEELA's right to proceed "in rem" against its collateral, which included the lump sum payment for the accumulated leave by operation of local law. AEELA acknowledged, however, that it was only entitled to payment for pre-petition accumulated leave; payment for any post-petition leave belonged to the Debtor.

The Debtor filed an opposition to AEELA's motion and a cross-motion for summary judgment. The Debtor argued that the two letters AEELA sent to the Municipality of Caguas violated the discharge injunction because AEELA knew of the discharge order and was trying to collect a pre-petition debt that had been discharged. Although the Debtor acknowledged that the letters were not sent to him personally, he contended that AEELA's actions prevented him from collecting monies to which he was entitled, i.e., payment for his accumulated leave. The Debtor also acknowledged AEELA's statutory lien on his savings and dividends accounts, but argued there was no statutory lien encumbering his accumulated leave because there was no such lien at the time of his bankruptcy filing. According to the Debtor, AEELA's statutory lien on the accumulated leave did not arise until after his retirement in December 2012, and because the discharge order had already entered at the time of his retirement, there was no existing personal debt to which the lien could attach. Thus, the Debtor contended, once AEELA collected the $18,457.76 in his savings and dividends accounts, the remaining balance did not have any collateral to secure it and was subject to discharge pursuant to § 524.

The bankruptcy court held a hearing on the cross-motions for summary judgment,

and, on May 7, 2015, it issued an opinion and order granting AEELA's motion for summary judgment and denying the Debtor's cross-motion for summary judgment. *See In re Velez Fonseca, supra.* In reaching its decision, the bankruptcy court examined the applicable Puerto Rico statutes, and concluded AEELA had a statutory lien which arose at the moment the Debtor obtained the loans from AEELA. The bankruptcy court also determined AEELA's statutory lien attached not only to the Debtor's savings and dividends, but also to all credits, deposits, or surplus held by the government, including the Debtor's accumulated vacation and sick leave. The bankruptcy court concluded, therefore, as follows:

> Since AEELA has a valid statutory lien that secures the loans provided to the Plaintiff, it is allowed to proceed against the collateral to collect on its claim up to the amount of collateral available. The two letters sent by AEELA to the Municipality of Caguas clearly stated that they were not an attempt to collect on plaintiffs' [sic] personal debts but to collect against the collateral "in rem." The fact that AEELA had notice of the entry of discharge is inconsequential since it would not bar AEELA from acting as it did. Therefore, AEELA's actions did not violate the discharge injunction and it may proceed "in rem" against the collateral that secures its debts but limited to the amounts of its collateral since Plaintiff's personal debts have been discharged.

*In re Velez Fonseca,* 534 B.R. at 271–72. This appeal followed.

## JURISDICTION

We have jurisdiction to hear appeals from a final judgment of the bankruptcy court. 28 U.S.C. § 158(a)(1). An order granting summary judgment is a final or-der where no counts against any defendants remain. *Desmond v. Raymond C. Green, Inc. (In re Harborhouse of Gloucester, LLC),* 523 B.R. 749, 752 (1st Cir. BAP 2014) (citations omitted). As the bankruptcy court's order resolved all counts in the complaint, the order was final and we have jurisdiction to hear this appeal.

## STANDARD OF REVIEW

We review a bankruptcy court's grant of summary judgment de novo. *See Harrington v. Simmons (In re Harrington),* 525 B.R. 543, 547 (1st Cir. BAP 2015) (citing *Ocasio–Hernández v. Fortuño–Burset,* 777 F.3d 1, 4 (1st Cir.2015); *Velázquez–Pérez v. Developers Diversified Realty Corp.,* 753 F.3d 265, 270 (1st Cir. 2014)).

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is proper only where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(a); Fed. R. Bankr.P. 7056. The parties agreed that this matter was appropriate for summary judgment disposition as there were no material facts in dispute and one of the parties was entitled to judgment as a matter of law.

### II. Violation of the Discharge Injunction

▬ Pursuant to § 727(b), a discharge relieves a debtor from all personal liabilities that arose pre-petition, subject to certain exceptions from discharge included in § 523. Section 524(a) permanently enjoins creditor actions to collect discharged debts, providing that a discharge "operates as an injunction against the commencement or continuation of an action, the em-

ployment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor...." 11 U.S.C. § 524(a)(2).

However, "a bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debt *in rem*." *Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). "Bankruptcy law treats debts for which the debtor is not personally liable differently." *Arruda v. Sears, Roebuck & Co.*, 273 B.R. 332, 343 (D.R.I.2002), *aff'd* 310 F.3d 13 (1st Cir. 2002). "Unlike personal debts, secured claims may be able to ride through bankruptcy unaffected by the discharge injunction." *In re Velez Fonseca*, 534 B.R. at 266 (citing *Johnson*, 501 U.S. at 82–83, 111 S.Ct. 2150). "Fundamentally, a discharge merely releases a debtor from personal liability on the discharged debt; when a creditor holds a mortgage lien or other interest to secure the debt, the creditor's rights in collateral, such as foreclosure rights, survive or pass through the bankruptcy." *In re Reuss*, No. DT–07–05279, 2011 WL 1522333, at *2 (Bankr.W.D.Mich. Apr. 12, 2011) (citations omitted). Thus, a creditor's right to foreclose on a valid, enforceable lien survives bankruptcy notwithstanding the discharge of personal liability. *See Johnson*, 501 U.S. at 82–83, 111 S.Ct. 2150; *Canning v. Beneficial Me., Inc. (In re Canning)*, 706 F.3d 64, 69 (1st Cir.2013).

The bankruptcy court determined that AEELA's actions did not violate the discharge injunction because AEELA had a

statutory lien, as defined by the Bankruptcy Code, over both the Debtor's savings and dividends accounts with AEELA and his pre-petition accumulated leave, which passed through the bankruptcy unaffected and, as a result, its actions were not an attempt to collect a debt from the Debtor in personam but to collect against the collateral in rem.

## III. Whether AEELA Had a Statutory Lien [7]

The Bankruptcy Code defines the term "statutory lien" as follows:

[A] lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute.

11 U.S.C. § 101(53). "A lien created by statute is limited in operation and extent by the terms of the statute, and can arise and be enforced only in the event and under the facts provided for in the statute." *Fleet Credit Corp. v. TML Bus Sales, Inc.*, 65 F.3d 119, 122 (9th Cir.1995) (citation omitted) (internal quotations omitted).

The bankruptcy court determined that AEELA had a statutory lien because the loans AEELA provides to its members are secured solely by force of several statutes. The Debtor argues that the bankruptcy court erred in determining that, at the moment the Debtor obtained his prepetition loans from AEELA, a statutory lien attached to the future liquidation of

---

7. Although the Debtor signed promissory notes in connection with the AEELA loans, there is no evidence in the record that he signed a security agreement which would have given rise to a consensual lien or security interest as defined by § 101(51) (defining

the term "security interest" as a "lien created by an agreement"). Moreover, the parties agreed at oral argument that AEELA did not have a consensual lien. Thus, the appropriate question is whether AEELA had a statutory lien.

his unused leave, despite the fact that he was not entitled to a lump sum payment for his accumulated leave until he retired. The Debtor contends that in reaching its decision, the bankruptcy court confused two sections of AEELA's statute establishing different interests, one pertaining to savings and dividends accounts with AEELA, and another over any credits or funds in the employer's possession at the time the member ceases employment.[8] We begin by looking at the applicable statutes.

The Act sets forth AEELA's powers and authority.[9] *See* P.R. Laws Ann. tit. 3, § 862, *et seq.* Section 862f of the Act provides, in relevant part, as follows:

> The Board of Directors shall have all the powers that are necessary and convenient to achieve the purposes of the Association, including, without being construed as a limitation, the following: (a) To grant personal loans to the employees and pensioned members at an interest rate approved by the Board of Directors, which shall not exceed seven percent (7%) per annum, with such security and margin, and under such amortization terms as established by regulations. The Association is also empowered to grant mortgage loans pursuant to the norms and requirements of the secondary mortgage markets of the United States and Puerto Rico, and the applicable federal and local laws, always seeking the best possible financing options for its members. The Association and the retirement systems sponsored by the Government of the Commonwealth of Puerto Rico are hereby empowered to deduct from the savings and contributions of those employees who have been permanently separated from service from any reason, all sums they may owe to the Association, as well as all public employees retirement systems to deduct from the pensions the monthly amortizations to be credited to the loans granted.
>
> In those cases that the employee has a debt with the Association and any retirement system, the savings and contributions that the employee may have in the respective organization shall answer, in the first place, for outstanding obligations contracted with the respective body. Should the savings and contributions exceed the total amount of said obligations, the balance shall be used to amortize the obligations incurred by the employee with the Association or retirement system, as the case may be.

P.R. Laws Ann. tit. 3, § 862f.

This section authorizes AEELA to grant personal loans to its members, such as the

---

8. The Debtor also argues that the bankruptcy court improperly shifted the burden of proof, requiring him to prove that AEELA's claimed statutory lien against his accumulated leave was different from a lien against the savings and dividends accounts deposited with AEELA. According to the Debtor, the bankruptcy court determined that he could not properly distinguish the two liens and, as a result, held that AEELA had a statutory lien in the accumulated leave. We do not agree that the bankruptcy court based its ruling on the Debtor's failure to distinguish between the two types of collateral and, therefore, the Debtor's argument requires no further discussion. Moreover, despite the Debtor's assertions to the contrary, the bankruptcy court examined each of the relevant sections of the applicable statute and its analysis was comprehensive and well-articulated.

9. Puerto Rico Law No. 9 of April 9, 2013, known as the "New Puerto Rico Commonwealth Employees Association Act," repealed the Act. However, the relevant facts of this case all occurred prior to the enactment of the New Puerto Rico Commonwealth Employees Association Act on April 9, 2013, and, therefore, the Act is the applicable statute. Moreover, although the sections and numbers were reorganized in the new act, the substance of the relevant sections are substantially the same.

Debtor, and to deduct any amounts a member owes to AEELA from the member's savings and contributions when he is permanently separated from service. The Debtor obtained two such loans from AEELA and the loans were secured by the collateral mentioned in this section, including his "savings and contributions." This lien arose solely by force of the statute and, therefore, qualified as a statutory lien as defined by the Bankruptcy Code. *See In re Ortiz Vega,* 75 B.R. at 861.

Although the Debtor does not agree that AEELA had a statutory lien on the $18,457.76 in his savings and dividends accounts at the time of his bankruptcy filing, he concedes that AEELA had a right to set off those funds as partial payment for the debt; he calls this a "contractual set off right." Thus, those funds are not at issue here, and we do not need to discuss them further. The Debtor alleges, however, that his savings and dividends accounts were the only funds recoverable by AEELA under the statute. He argues, therefore, that after AEELA deducted the funds from his savings and dividends accounts, the remaining debt balance was not secured and was discharged pursuant to § 524. We must consider, therefore, whether the statute provided AEELA with a lien over any other collateral, such as his unliquidated accumulated leave.

Section 863d of the Act addresses the government's retention and transfer of certain funds to AEELA as payment for any outstanding debt.

> Any credit, deposit or surplus, for any reason, in the Commonwealth Government, or in any dependency or instrumentality thereof, [o]n behalf of a member who, having ceased in office, is in debt with the Association, shall be retained by the Secretary of the Treasury of Puerto Rico or the competent officer, if not alienated in the corresponding retirement system, and covered into the funds of the Association, partially or fully to pay the debt pending therewith.

P.R. Laws Ann. tit. 3, § 863d.

Pursuant to this section, any "credit, deposit or surplus" held by the government, not alienated for the member's retirement system, shall be used to pay off any outstanding debt to AEELA upon a member's separation from office. Generally, this section allows AEELA to recover any asset held by the government to pay off the debt of its members when the member retires, unless these assets have been earmarked for some other purpose, none of which are applicable in this case. It is evident, therefore, that this section establishes a statutory lien on "any credit, deposit or surplus" held by the government when the member is terminated or retires. The question becomes whether the Debtor's accumulated leave can be considered a "credit, deposit or surplus" subject to the deductions allowed by this section.

P.R. Laws Ann. tit. 3, § 703, *et seq.*, governs the accumulation of vacation and sick leave by government employees, and their entitlement to a lump sum payment of such leave when they cease employment. *See* P.R. Laws Ann. tit. 3, § 703a. Section 703a provides, in relevant part:

> Every officer or employee of the Commonwealth of Puerto Rico, except the officers of the Executive Branch appointed by the Governor and of the instrumentalities and public corporations shall be entitled to be paid, and there shall be paid a lump sum of money for the leaves of absence he may have accumulated up to a maximum of sixty (60) working days on his removal from service for any cause; and for sick leave he may have accumulated up to a maximum of ninety (90) working days, on his removal from service in order to avail

himself of a retirement, if he is a participant of any retirement system sponsored by the Government and if he is not, on his final removal from service, if he has rendered at least ten (10) years of services. This lump sum for both leaves shall be paid at the rate of the salary earned by the officer or employee at the time of his removal from service, independently of the days he has enjoyed said leaves during the year.

P.R. Laws Ann. tit. 3, § 703a.

This section allows government employees, such as the Debtor, to accumulate up to 60 days of vacation leave and up to 90 days of sick leave contemporaneously with service as an employee. Other than using such accumulated days for paid leave during employment, an employee acquires no right to payment for such accumulated leave until the termination of employment through retirement or otherwise. AEELA likewise acquires no right to receive any payment on account of such credits until such time as the employee acquires a right to a lump sum payment.

Upon retirement, the leave balances are liquidated into a lump sum payment based on the last salary earned by the retiree. Section 703d, in turn, addresses the issue of using the lump sum payment for vacation and sick leave as payment for loans granted by AEELA to its members. It provides:

> The lump payment authorized by §§ 703–703e of this title shall not be subject to deductions by reason of savings and contributions to the retirement systems of government employees, *but shall be subject to other deductions authorized by law, such as obligations of [a] taxable nature and those voluntarily incurred by the officer or employee by reason of loans from the Employees Association,* the government retirement systems or the credit cooperative associations of public employees or deduction for affiliation fees to employees associations authorized by law.

P.R. Laws Ann. tit. 3, § 703d (emphasis added).

This section clearly provides that an employee's entitlement to a lump sum payment for accumulated leave is subject to deductions for the payment of AEELA loans obtained by the employee. As previously mentioned, the Act allows for any credit, deposit, or surplus held by the government to be retained and transferred to AEELA for payment of any outstanding debts upon an employee's retirement. *See* P.R. Laws Ann. tit. 3, § 863d. It is evident that an employee's entitlement to a lump sum payment of accumulated leave under § 703d would be considered a credit, deposit, or surplus in the government which could be used to pay off any outstanding debt to AEELA when a member retires pursuant to § 863d. Moreover, the statute specifically provides that the lump sum payment for the liquidation of accumulated leave can be withheld for a member's unpaid debt with AEELA. Thus, these sections give rise to a statutory lien over the Debtor's accumulated leave.

The Debtor does not dispute that his right to receive a lump sum payment for accumulated leave is a "credit" for purposes of the Act. He contends, however, that AEELA did not have a perfected statutory lien over such credit at the time of bankruptcy filing because the conditions giving rise to the alleged statutory lien did not occur until after his discharge. According to the Debtor, the transfer to AEELA of any credit held by the government is dependent on three conditions: (1) the member must have ceased employment; (2) the member must owe a debt to AEELA; and (3) the credit, deposit, or surplus must not have been alienated for other purposes as allowed by the law. As

such, he believes that a statutory lien over a member's accumulated leave cannot be created or perfected until the member ceases employment. According to the Debtor, as the triggering event, his retirement, had not occurred and his accumulated leave was not a liquid tangible asset as of the petition date, the accumulated leave constituted future wages to which the statutory lien could not attach.

 The Debtor is correct that generally a lien can only attach "to property that the debtor owned, or had rights to, at the time of the filing of the bankruptcy petition but does not survive to attach [to] the debtor's property that is acquired after filing the bankruptcy petition." *Drake v. Mass. Dep't of Revenue (In re Drake)*, 434 B.R. 11, 23 (Bankr.D.Mass.2010); *see also Frank v. Mich. State Unemployment Agency (In re Thompson Boat Co.)*, 252 F.3d 852, 854 (6th Cir.2001) (holding creditor had lien on debtor's property, but lien did not attach to property acquired after the bankruptcy filing). There are, however, some exceptions to and/or permutations of this general rule. For example, some statutes specifically expand the scope of the lien created by the statute to include after-acquired property. We need not consider whether any such exception is applicable here, however, because on the petition date the Debtor held a property interest in his accumulated leave under Puerto Rico law even though he did not then have a right to payment for such leave because his employment had not yet terminated. In fact, his unliquidated pre-petition accumulated leave constituted property of the Debtor's bankruptcy estate.

 Section 541 defines property of the estate and provides that all legal or equitable interests of the debtor in property as of the commencement of the case are property of the estate. *See* 11 U.S.C. § 541(a). This definition encompasses conditional, future, speculative, and equitable interests of the debtor as of the bankruptcy filing. "[T]he legislative history of [§ 541 of] the Bankruptcy Code makes it clear that Congress intended to include all legally recognizable interests although they may be contingent and not subject to possession until some future time." *Anderson v. Peterson (In re Peterson)*, A.P. No. 05–6520, 2006 WL 6589911, at *2 (Bankr.N.D.Ga. July 7, 2006) (citation omitted). Thus, "[t]he statute ... makes clear that if a[c]hapter 7 debtor has a contingent right to receive funds in the future, that contingent right belongs to the bankruptcy estate and if the contingency occurs post-petition, the funds received belong to [the estate], unless the entitlement of the debtor results from services performed by the debtor after the commencement of the case...." *Id.* at *3 (citation omitted). With respect to accrued vacation leave, the legislative history of § 541 states that § 541(a)(1) effectively overruled *Lines v. Frederick*, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970), in which the Supreme Court held under the Bankruptcy Code's predecessor that accrued vacation leave was not property of the bankruptcy estate. *See Bernstein v. Richardson*, 34 B.R. 611, 612 (Bankr.D.Colo. 1983) (citing H.R.Rep. No. 95–595, *reprinted in* U.S.C.C.A.N.1978, 5787). Consequently, the courts that have addressed the issue after § 541's enactment have held that a debtor's unliquidated accrued leave is property of the bankruptcy estate. *See id.; see also In re Willman*, No. 11–40709, 2012 WL 639007, *2 (Bankr.D.S.D. Feb. 16, 2012); *In re Peterson*, 2006 WL 6589911, at *2–3. As such, the Debtor clearly had a property interest in his pre-petition accumulated leave as of the petition date. Thus, the fact that the Debtor's pre-petition accumulated leave was not a tangible, liquidated asset (i.e. reduced to a lump sum payment) as of the petition date is of no consequence. The Debtor had a

property interest on the petition date in his pre-petition accumulated leave sufficient for AEELA's statutory lien to attach. Contrary to the Debtor's assertions, the triggering event for AEELA's statutory lien in the Debtor's accumulated leave was the granting of the loans, not the termination of his employment and his associated right to a lump sum payment.

The Debtor further argues that, as of the petition date, his unliquidated leave constituted future, post-petition wages, and that AEELA's claimed lien could not attach to his future wages. In support, he cites *In re Miranda Soto*, 667 F.2d 235 (1st Cir.1981). In *Miranda Soto*, the debtor was a government employee and a member of AEELA. Prior to the bankruptcy filing, the debtor borrowed money from AEELA, executing a promissory note and assigning a percentage of his future wages to pay the loan. After the debtor filed his chapter 7 petition, the bankruptcy court ordered AEELA to cease making payroll deductions from the debtor's salary and to reimburse the debtor for all such deductions made after the filing date. AEELA appealed, arguing, among other things, that it was a secured creditor because it had a continuing lien on the debtor's future wages. The First Circuit affirmed the lower court's decision, explaining that the "accepted rule is that an assignment of future wages as security for a present debt does not constitute a lien within the meaning of the Bankruptcy Code." *Id.* at 237 (citations omitted). *In re Miranda Soto* is distinguishable from the present case. In this case, AEELA was not attempting to recover from the Debtor's future wages by continuing to make post-petition deductions from his salary. Rather, it was seeking to recover from his pre-petition accumulated leave, which constituted a "credit" or "surplus" held by the government and which AEELA was authorized by statute to obtain as payment for its loans. Credits earned after the petition date were specifically excluded from AEELA's demand because those accruals were post-petition earnings or credits.

The Debtor also relies on several other decisions to support his argument that AEELA's statutory lien was not perfected because the statute's conditions were not met at the time of the bankruptcy filing. *See, e.g., McEwen v. Westphal (In re Pierce)*, 809 F.2d 1356, 1360 (8th Cir.1987) (holding lien for attorney's fees was not perfected since no notice of the lien was filed pre-petition as required by state law); *In re Hanson*, 164 B.R. 632 (Bankr.D.S.D. 1994) (determining statutory lien was not perfected over the reimbursement it paid to a hospital for unpaid services provided to a chapter 7 debtor because the statutory lien was filed after the entry of discharge); and *Claussen v. Brookings Cnty. (In re Claussen)*, 118 B.R. 1009 (Bankr.D.S.D. 1990) (concluding statutory lien for payment of emergency services provided to a chapter 7 debtor's indigent wife was dischargeable because the indigent emergency medical services lien was not filed or perfected pre-petition)).

As the bankruptcy court pointed out below, the Debtor also failed to acknowledge that in those decisions applicable state law required additional steps in order for the respective liens to attach to the collateral. AEELA's lien was effective by operation of law and the Debtor has not presented any legal authority requiring any further act by AEELA for its statutory lien to attach to any credit, deposit, or surplus other than disbursing the loan itself. The fact that the liquidation of some accumulated benefits cannot take place until after retirement does not mean that AEELA's claim is not secured by those credits, deposits, or surpluses until the employee is separated from work. As the bankruptcy court stated, "[t]his is a public policy measure undertaken for the benefit of AEELA

and its members, not an additional perfection requirement." Consequently, at the moment a member voluntarily obtains a loan from AEELA, a statutory lien attaches to all credits, deposits, or surpluses, including the lump sum liquidation of accumulated leave.

Based on the foregoing, the bankruptcy court did not err in concluding that AEELA had a valid statutory lien in the Debtor's pre-petition accumulated leave, and, as a result, it was allowed to proceed against the lump sum proceeds of the collateral due to the Debtor upon the termination of his employment to recover the balance due on its claim. As such, the two letters sent by AEELA to the Municipality of Caguas were not an attempt to collect a debt from the Debtor in personam, but to collect against the collateral in rem. Therefore, AEELA's actions did not violate the discharge injunction.

## CONCLUSION

For the reasons set forth above, we **AFFIRM** the decision of the bankruptcy court.